**TEXACO INC., Appellant,**

v.

**GREAT SOUTHERN LIFE INSURANCE COMPANY, Appellee.**

No. 17429.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 23, 1979.

Rehearing Denied Oct. 4, 1979.

John D. White, Houston, for appellant.

Dow, Cogburn & Friedman, Edmund L. Cogburn, Baker & Botts, Justin M. Campbell, III, Houston, for appellee.

PEDEN, Justice.

Texaco Inc., the lessee, appeals from the granting of a summary declaratory judgment holding, in part, that a 1968 service station lease, which had been assigned by the lessor to the Great Southern Life Insurance Company, was still in effect. Texaco complains that the trial court erred in granting Great Southern's motion for summary judgment and in denying its own motion because, as a matter of law, the lease in question terminated on October 11, 1976.

In 1968 Texaco leased from Judge Roy Hofheinz, who was acting individually and as trustee of Hofheinz's Family Trust No. 2, approximately one acre of land for a Texaco service station site. Paragraph 17 of the lease provided:

Change in Ownership. No change in ownership, assignment of this lease, or assignment of rentals hereunder shall be binding upon lessee unless and until lessee has been furnished either the original instrument evidencing such transfer, or assignment, or a true copy thereof.

In February of 1970, Hofheinz executed a $450,000 promissory note and deed of trust (covering the property in question) in favor of Great Southern to secure a loan. As additional security for the note, Hofheinz assigned the Texaco lease to Great Southern, specifically agreeing not to cancel it.

Before taking assignment of the lease, Great Southern asked Texaco for a letter stating that the lease was valid and in force and that Texaco would honor an assignment of it. Texaco complied on January 22, 1970, by a letter signed by Mr. A. W. Baucum, Executive Vice President of Texaco. Called the "Baucum Letter", it included these statements:

"We acknowledge notification that the owner (lessor-landlord) is assigning the lessor interest in the captioned lease to your Company as additional security for a mortgage loan. With respect to the captioned lease we wish to advise you as follows:

\*　　\*　　\*　　\*　　\*　　\*

"2. The lease is in full force and effect; . . . we have no notice of any sale, transfer, or assignment of the lease or of the rentals except the assignment to Great Southern Life Insurance Company;

. . .

\*　　\*　　\*　　\*　　\*　　\*

"5. We agree that because you are depending upon this lease to secure your mortgage loan, should it become necessary for you in the future to take ownership of the property secured by your mortgage, we will honor this lease and accept you as owner (lessor-landlord) for the remainder of the lease term as though no change in ownership had occurred."

On March 13, 1972, after the closing of the loan between Hofheinz and Great Southern, Hofheinz conveyed the leased property (apparently by a correction deed) to Astrodomain Corporation subject to:

"2. Deed of Trust dated February 10, 1970 Grantor to C. L. Greenwood, Trustee, covering said lands, recorded in Volume 7062, page 99, of the Mortgage Records of said County, given to secure payment of a note in the original principal amount of $450,000.00 payable to the order of Great Southern Life Insurance Company;

"3. Lease dated April 18, 1968, as amended between Grantor and Texaco, Inc. described in Lease Assignment from Grantor to Great Southern Life Insurance Company, recorded in Volume 2276, page 456, of the Contract Records of said County:

.　\*　　\*　　\*　　\*　　\*　　\*

"5. All instruments mentioned in any or all of the instruments as listed and/or existing in connection with or as security for the payment of any or all of the indebtedness mentioned herein."

Texaco was not provided with a copy of the assignment of the lease to Great Southern (as required by its Paragraph 17 of the original lease) until August 30, 1976.

By May of 1972, Texaco had received a copy of the conveyance of the property by Hofheinz to Astrodomain, and Texaco attorned to Astrodomain by payment of rentals to Astrodomain.

On August 10, 1976, Astrodomain wrote to Texaco purporting to cancel the lease. Realizing a mistake had been made, Astrodomain called on August 14, and wrote on August 16, to withdraw the cancellation. Texaco replied by telegram and letter, both dated August 18, that it did not consent to withdrawal of the cancellation and said that the lease would be terminated effective October 11, 1976. By deposition testimony, the property management supervisor in the marketing department of Texaco admitted it had not changed its position as to the lease between receipt of the August 10, and August 16, letters. He testified that for some time the service station facility had

been leased back to the Astrodomain Corporation and he believed the same rent paid by Texaco was being paid back by Astrodomain. Texaco removed its equipment from the premises on October 11, 1976.

Great Southern began foreclosure proceedings after Astrodomain defaulted on its note in July, 1976, and on November 2, 1976, a substitute trustee sold the subject property at foreclosure and conveyed it to the purchaser, Great Southern.

Texaco says the principal question on appeal is whether it was entitled, as a matter of law, to accept the August 10, 1976, cancellation of the lease by Astrodomain.

■ When, as here, two or more parties file motions for summary judgment and at least one is granted and the other overruled, we determine on appeal all questions presented, including the propriety of the order overruling the losing party's motion. *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958); *Estrada v. River Oaks Bank and Trust Co.*, 550 S.W.2d 719, 724 (Tex.Civ.App.1977, writ ref. n. r. e.). Texaco maintains that the disputed lease had been terminated as a matter of law by action of the parties to the lease, so the trial court's granting of Great Southern's motion for summary judgment was improper; further, that because the lease was terminated, no genuine issue of material fact existed, and the trial court erred in overruling its motion for summary judgment.

Great Southern contends that without change of position by Texaco, Astrodomain's purported withdrawal of its cancellation of the lease should be honored. It is uncontroverted that when the cancellation letter was written to Texaco on August 10, 1976, its writers were not aware that Hofheinz had specifically agreed not to cancel the lease.

We find no Texas cases in point. The Arkansas Supreme Court held in *Lesser-Goldman Cotton Co. v. Fletcher*, 153 Ark. 73, 239 S.W. 742 (1922):

A notice of cancellation of a lease, to take effect in the future, may be revoked or withdrawn before it has been acted on by the other party to the contract, and in such case, the rights of the parties under the contract are the same thereafter as if the notice of cancellation had not been given.

On the other hand, it is stated at 120 A.L.R. 558 (1939):

It seems clear, on principle and according to the weight of authority, that the landlord's unilateral action or conduct, not assented to by the tenant, cannot have the effect of abrogating the legal consequences of the notice to quit in terminating the tenancy, since the tenant is entitled to count upon it, and may have acted under the supposition that the landlord would insist upon his right to enforce the notice to vacate. (citing cases).

■ We hold that where, as in our case, the landlord mistakenly sent a cancellation notice and the tenant did not change its position in reliance upon the cancellation notice before a withdrawal of it was communicated (within four days), the withdrawal is effective.

Affirmed.

COLEMAN, C. J., and DOYLE, J., participated.