**Laszlo N. TAUBER, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 83–1042.**

District of Columbia Court of Appeals.
Argued June 4, 1985.
Decided June 16, 1986.

Louis Ginberg, Washington, D.C., for appellant.

William J. Earl, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before NEBEKER and FERREN, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

This is an appeal from a decision of the Civil Division, Superior Court, which held that appellee, the District of Columbia, is entitled to continued occupancy of a building leased by appellant, Laszlo N. Tauber, under a twenty-year lease. Two issues are raised on appeal: whether the lease is unenforceable because of noncompliance with the statute of frauds, and whether the lease became terminated on December 31, 1981, by mutual agreement of the parties. Finding error in the trial court's failure to provide adequate findings, we reverse and remand for further proceedings.

In 1968, the District of Columbia leased the Presidential Building at 415 12th Street, N.W., for a term of five years. With renegotiated terms, the lease was renewed for three years in 1973. In 1974, however, Dr. Laszlo N. Tauber, as trustee for the Pennsylvania Avenue Joint Venture, acquired the Presidential Building and urged the District to cancel the lease and negotiate a longer term lease. The Tauber lease was executed following lengthy negotiations between Tauber and officials of the District of Columbia Department of General Services (DGS). Tauber was interested in a twenty-year lease. The District, on the other hand, planning to build its own municipal office building, was interested in a short-term lease. One focus of the negotiations, therefore, was an escape clause. As a result, the parties agreed to the following:

> Should the District, at any time, after the first five years of this lease, construct an office building of its own to house the tenants in the demised premises, the District may, upon two years' written notice,

vacate the demised premises without damage and all rents shall cease upon such vacation, provided however, that should a new District owned building not be completed at the expiration of the two year notice period as aforesaid, then the District may remain in the demised premises until completion of its building and may vacate the demised premises upon ninety (90) days' written notice so to do.

The provision in the twenty-year lease incorporated several of the parties' desires. To satisfy the District's contingency regarding a new building, the provision allowed an escape after a term shorter than twenty years.[1] The clause incorporated two provisions to benefit the appellant. First, the District was to give two years' notice to the appellant. This condition afforded him the time to make the necessary arrangements to secure a new tenant. Second, there was a requirement that appellee vacate before the lease termination only upon construction of its own building to house occupants of the Presidential Building. This provision safeguarded the landlord's interest by precluding the District from negotiating a lease with another landlord. After appellant signed the lease, the Mayor, with the approval of Corporation Counsel, signed the lease. The lease, dated July 29, 1975, commenced October 1, 1975, and was to expire September 30, 1995. Although signed by both parties, the lease was not executed under seal as required by law.[2] Nevertheless, both parties performed in accordance with its terms for several years.

After entering negotiations to acquire a building site with the General Services Administration (GSA) and obtaining a budget appropriation, the District gave appellant notice of intent to vacate on October 30, 1978.[3] The notice set forth Addendum H in

---

1. The provision is ambiguous on its face concerning the length of the minimum term—five or seven years. Whether the two years' notice period is included in the first five years of the lease creates the ambiguity.

2. D.C.Code § 45–306 (1981).

3. This notice was pursuant to an interoffice memorandum from Colonel Starobin, then the Director of the Department of General Services and chief negotiator of the Tauber lease for the District, to Mr. Casell, a participant in the lease negotiations:

full and explained that because the District had appropriated funds and anticipated completion of its building by the end of 1981, it intended to vacate at that time. The termination would have been six years and three months into the lease and with more than three years' notice.[4] Appellant acknowledged receipt of the notice of intent to vacate on November 1, 1978.[5] Difficulties in obtaining the site for the municipal office building and in therefore determining when the building would be finished, however, prompted the District to send Dr. Tauber's agent a letter rescinding its notice on November 3, 1979, and stating that, when a completion date could be determined, it would give ninety-days' notice under the provisions of Addendum H. Appellant, on November 8, 1979, "rejected" the District's rescission and offered to negotiate the lease to begin after December 31, 1981.

Over the next year, the District acquired additional funds but was still unable to meet the price sought by GSA. On October 14, 1980, it reiterated in a letter its intention to remain in the premises until the proposed new office building was completed, and to give ninety-days' notice in compliance with Addendum H once completed. Appellant, in response, restated its position that the October 30, 1978, notice governed defendant's terms so that December 31, 1981 remained the vacancy date. In July 1981, exclusive negotiations between the District and GSA ended and the District subsequently was outbid on the site. Nevertheless, it acquired a new site for a municipal office building in 1982, with expected completion of construction by March 1985.

In the fall of 1981, the parties exchanged letters reasserting their contrary positions. With the District still occupying the premises on December 31, 1981—the date of vacation indicated in the October 30, 1978 notice—Tauber filed a complaint on January 2, 1982 in Superior Court, Landlord and Tenant Branch, for possession of the office space and three days later, a complaint for a declaratory judgment designating the District a "holdover occupant and trespasser" liable for fair market rental.[6] In August 1982, the cases were consolidated and in November, the parties' cross-motions for summary judgment were denied.[7]

Re: Presidential Bldg. Lease
Addendum H calls for 2 yr. notice if we decide to build our own bldg. I believe it would be well to send notice now to make sure we don't forget. We can always rescind. Prepare letter for my signature citing date of December 31, 1981 as projected date of vacating lease.

4. The letter read as follows:
The District of Columbia Government has received authorization and appropriations in the FY '78 budget to construct a Municipal Office Building on a site between 3rd & 4th and D & E Streets, N.W. This building was justified as a replacement for leased space in the Presidential and Potomac Buildings. It is anticipated that this building will be completed by the end of 1981.
This letter is the District's notice of intent to vacate the captioned space which is further identified as follows:
Square feet: 216,168 (Office space) 533.29 (Special purpose)
Type space: Office and special purpose
Date of lease: July 29, 1975
Effective date of this notice: Midnight, December 31, 1981

We would like to extend our appreciation for your courtesy and cooperation during our tenancy of this space.
Sincerely yours,
Sam D. Starobin
Director of General Services

5. Dear Col. Starobin:
Your letter of October 30, 1978 addressed to Mrs. Werth was forwarded to me. We acknowledge and accept the termination of the lease of the D.C. Government in the Presidential Building, 413 12th Street, N.W. effective December 31, 1981.
We appreciated your tenancy very much.
We will closely follow your progress in the construction of the Municipal Office Building and prepare a smooth transition.

6. In February, the parties stipulated that Tauber's future acceptance of rent and provision of services did not constitute acts of waiver or estoppel for purposes of relief sought.

7. In his motion for summary judgment, plaintiff raised the statute of frauds issue for the first time. Subsequently, the pleadings were amended to include the claim.

On March 16, 1983, a thirteen-day nonjury trial commenced. At trial, Dr. Tauber testified that he was unaware that leases required seals and, had he known, he would have signed under seal. He also testified that he interpreted Addendum H as requiring two years' notice to vacate as long as the District remained in the building a minimum of seven years. He therefore considered the District's notice of intent to vacate as contrary to the terms of Addendum H and therefore an unconditional notice of termination of the lease. According to him, his acknowledgment of the notice effectively nullified Addendum H.

Colonel Starobin, on the other hand, testified that he interpreted Addendum H to mean that the District could give notice to vacate under any circumstances which would reasonably lead to completion of a new municipal building as long as the District remained in the building for five years. Starobin claimed that in notifying Tauber he intended to invoke the provisions of Addendum H, rather than discard them. Nor did he view Dr. Tauber's letter of November 1, 1978, to be an acceptance of an unqualified offer to terminate the lease. Finally, he testified that he believed when he sent the notice that the new building would be built within the time-frame mentioned.

Following the introduction of evidence of the 14th and U Streets site near the close of testimony, the trial court attempted to ascertain from the attorneys the government's plans for the site and its relevance to Addendum H. Emphasizing the importance of this information to a considered decision in the case, the trial court requested the government to present witnesses to clarify the issue.[8] Nevertheless, the government, arguing that the lease was valid until 1995 so that contingent plans were immaterial, later declined to present additional witnesses on the issue. For some reason, not apparent to us, the trial court abandoned its previously announced viewpoint and did not pursue the important question.

The trial court concluded that, although the lease did not formally comply with the statute of frauds, a number of factors rendered the lease enforceable: the parties admitted the existence of an agreement—a twenty year lease in writing, executed by both parties, and the District had made several substantial alterations in the building in reliance on the lease. Furthermore, the court reasoned, the District would face serious financial problems and disruption to its school system if the lease were found unenforceable. Relying on equitable principles of waiver and part performance, the

8. In its exchange with the attorney, the trial court said:

THE COURT: ... let's see what the plans of this municipal building are. Are we talking about ... Addendum H construction? ... *I think that's very important.*

\* \* \* \* \* \*

THE COURT: *I hope you have some witnesses who will tell us something about it....*
MR. HARLAN: [The government's attorney] If my memory serves me clearly, the witness from the public school said that it was their belief that they had to move out of the Presidential Building, sometime, at some point, key to the construction of the municipal—
THE COURT: *Well, let's get somewhere and nail that down.* Well, let's find out whether we're talking about the municipal building or we're not talking about anything as far as Addendum H is concerned.

\* \* \* \* \* \*

THE COURT: You ask the D.C. Government about this. *It's important to this court, at least—[that] the court has—has that information.*
\* \* \* \* \* \*
THE COURT: Is it the present projection of D.C. Government that the *Presidential personnel would be removed upon completion of a municipal building, and either housed in the municipal building or in a district building? Now, if this is not resolved, we may have some problems* on the other end of the road.
MR. HARLAN: Well, as Your Honor is well aware, one of the District's arguments—and I would certainly say the lead argument—is that the letter from Colonel Starobin has no force and effect.
THE COURT: Well, that's it. *But you've got to prepare for the others, itself, that it does have force and effect, and that you might be in the second phase of Addendum H.*
[Emphasis added.]

court found that the lease was removed from the statute's ambit and enforceable by the appellee.

With regard to the termination of the lease, the court rejected appellant's interpretation of the facts. Rather than deeming appellee's notice of intent to vacate as unconditional because it came before the seven-year minimum,[9] it held that the notice was tendered in good faith, that it conformed with Addendum H, and that there was no "meeting of the minds" to terminate the lease unconditionally. Furthermore, the court noted that an alternative and more sensible reading of Addendum H in light of the circumstances of its drafting meant the lease could be terminated at any time after five years. Regardless of the correct interpretation of the lease, said the court, the District acted in a way that it believed conformed with the provisions of the Addendum and was exercising its conditional power of termination pursuant to it. The court deemed the termination notice legally ineffective when the District, in good faith, abandoned the 3rd and D Streets site. The court reasoned that once notice was tendered, three representations arose: (1) notice was given in good faith; (2) it would not be withdrawn without the landlord's consent; and (3) the tenant would exercise due diligence in acquiring the site and constructing the building. The court concluded that notice was given in good faith. Despite an attempt to rescind the notice when it became apparent that the site the District had specified in its initial letter would be unobtainable, the District pressed for its acquisition. When the vacation date of December 31, 1981, arrived and the condition of construction was not met, the court reasoned, the notice became ineffective. The trial court therefore concluded the statute of frauds was not controlling and found no mutual agreement to terminate the lease. Finally, although it noted the construction of the 14th and U Streets, N.W. site, the trial court, stating the issue was not before the court, explicitly declined to rule on its effects on the case.[10]

■ A. The statute of frauds mandates that certain agreements must be in writing to guard against perjury and protect against unfounded and fraudulent claims. *See Hackney v. Morelite Construction Co.*, 418 A.2d 1062, 1065–66 (D.C.1980). The District of Columbia requires estates in real property for more than one year to be created by an instrument under seal. *See* D.C.Code § 45–306 (1981). Several reasons, however, may render noncompliance with the statute of frauds inconsequential: (1) where the party's own fraud is responsible for the noncompliance (equitable estoppel); (2) where the doctrine of part performance applies (promissory estoppel); and (3) where the party has admitted the contract (waiver). *See Hackney, supra,* 418 A.2d at 1066. The trial court found that the Tauber lease was removed from the statute of frauds because the last of these three exceptions applied.

■ We find ample evidence to support the trial court's conclusion on waiver alone. The parties admitted the existence and terms of the lease in several ways: the parties executed the lease; the appellant admitted that had he known of the defect, he would have cured it; the parties admitted it in the pleadings, stipulations, and at trial by agreeing the lease was for a term of years subject to termination by Addendum H and in effect for almost six years. We find the parties' clear admission of their agreement sufficient to remove the lease from operation of the statute of frauds.[11]

---

9. Under Tauber's reading of the proviso, the District was obligated to remain in the building for a minimum of seven years. Had the District vacated when it had anticipated, its term would have been six years and three months. The District read the proviso to require a minimum of five years.

10. See the footnote on p. 26 of trial court findings.

11. Because we resolve this issue on the basis of waiver, we need not address the issue of part performance. We also note that the statute's intended use is as a defense rather than a basis

B. With regard to the second issue, however, we find error in the trial court's failure to develop the facts surrounding the 14th and U Streets acquisition and analyze their implications with resultant findings and conclusions. While the trial court itself recognized the potential importance of the acquisition of a new site for a municipal building, initial efforts to complete the record were never pursued. The finding that the termination notice became legally ineffective when appellee abandoned the original site was therefore rendered on the basis of an obviously inadequate record. Generally, a notice to quit is not retractable without the receiving party's consent, *see Devonshire v. Langstaff,* 10 Cal.App.2d 369, 373, 51 P.2d 902, 905 (1935); *Wisner v. Richards,* 62 Wash. 429, 431, 113 P. 1090, 1091 (1911); *cf., Texaco, Inc. v. Great Southern Life Insurance Co.,* 590 S.W.2d 522, 524 (Tex.Civ.App. 1979) (where cancellation notice mistakenly sent and withdrawn four days later, and no reliance on it, withdrawal effective). The issue of compliance with a condition of construction of a municipal building at any location in the city is germane to this case. It is not where the District constructs a municipal building, but whether the District constructs a building that is material under the lease.

Under Super.Ct.Civ.R. 52(a), the trial court is required to "state findings of fact specifically and state separately its conclusions of law in every action tried upon the facts without a jury...." This means there must be findings on material issues. Failure to do so requires remand. *See Bedell v. Inver Housing, Inc.,* 506 A.2d 202, 208 (D.C.1986); *Thomas v. Thomas,* 477 A.2d 728, 729 (D.C.1984) (per curiam) (case remanded when trial court failed to provide findings sufficient to facilitate appellate review). *See also McClure v. O. Henry Tent & Awning Co.,* 184 F.2d 636, 639 (7th Cir.1950). Because we lack the necessary findings on a material issue, we

for affirmative relief. *See Hackney, supra,* 418 A.2d at 1066.

are unable to apply the law intelligently to the facts of this case and must remand the case for further proceedings. *See Lyles v. United States,* 245 U.S.App.D.C. 215, 759 F.2d 941 (1985); *Golf City, Inc. v. Wilson Sporting Goods Co.,* 555 F.2d 426, 434–36 (5th Cir.1977); *Rule v. International Association of Bridge Structural and Ornamental Ironworkers,* 568 F.2d 558, 568 (8th Cir.1977). We therefore remand this case to the Superior Court for further proceedings and appropriate findings and conclusions on the District's construction of a municipal building at the 14th and U Streets site; and for a determination on whether, in light of these findings, the District is bound by Addendum H of the lease. The trial court should then enter an appropriate judgment. The judgment is vacated.

*Affirmed in part; reversed and remanded in part.*