**DISTRICT OF COLUMBIA HOUSING FINANCE AGENCY, et al., Appellants/Cross–Appellees,**

v.

**Charles L. HARPER, Sr., et al., Appellees/CRoss–Appellants.**

**Nos. 96–CV–10, 96–CV–121, 96–CV–125 and 96–CV–126.**

District of Columbia Court of Appeals.

Argued Oct. 8, 1997.

Decided Feb. 12, 1998.

Neal E. Krucoff, with whom Michael W. Beasley, Washington, DC, was on the brief, for appellants.

Edward Greensfelder, Washington, DC, for appellees.

Before TERRY and STEADMAN, Associate Judges and PRYOR, Senior Judge.

PRYOR, Senior Judge:

This dispute arose out of circumstances surrounding the lease of real property by appellees, a partnership consisting of Charles Harper and John Raye (the partnership), to appellant District of Columbia Housing Finance Agency (DCHFA). After the grant of partial summary judgment in favor of appellees on the issue of liability under the lease, and a subsequent assessment of damages, these appeals followed. DCHFA raises a variety of questions bearing on liability and the measure of damages.[1] Given our view of

---

1. In addition to the arguments directly addressed here, appellant contends the trial court's findings

that appellant conceded its tax liability during the trial and that the contractual interest rate of

the case, we address DCHFA's primary claim that, because of genuine issues of material facts with respect to the validity of the lease, the trial judge erred in ruling, by summary judgment, that the lease was enforceable and that appellant was liable for breach of the agreement. We also review the trial court's ruling that appellant's motion to reconsider its summary judgment was untimely. Because we conclude that the trial judge erred with respect to the latter question, it is necessary that the case be remanded for further proceedings.

## FACTS

In December 1989, appellant DCHFA signed an agreement to lease property on Rhode Island Avenue from the partnership for a period of ten years. The lease was signed on behalf of the lessor by Samuel Cofer,[2] an agent of the partnership, and on behalf of the lessee by Mary Louise Carstarphen, then Executive Director of DCHFA. Appellant vacated and surrendered the property on October 14, 1992, giving notice that it considered the lease agreement terminated. Appellees filed a complaint, seeking enforcement of the lease, against DCHFA and the District of Columbia on October 18, 1993.

In November of 1993, appellees moved for summary judgment; appellants also moved for summary judgment in December of 1993. DCHFA contended that, under D.C.Code § 45–306 as it read at the time the lease was executed, the lease was void because it had not been signed by the owner of the property but rather by his agent. In addition, they asserted there were "improprieties" in the procurement of the lease that rendered it unenforceable.

The trial judge, the Honorable Gregory Mize, granted partial summary judgment on the issue of liability to appellees on June 27, 1994. The court found the 1992 amendment to D.C.Code § 45–306, which changed the pre-existing law so as to permit an agent to sign a lease on behalf of the lessor, applied retroactively, and therefore covered the parties' lease. The court also found that DCHFA waived its statute of frauds defense under § 45–306 by stating in its answer and counterclaim that a lease existed. On the issue of the alleged improprieties, the court found that there was inadequate evidence to either grant summary judgment in favor of DCHFA or to prevent summary judgment in favor of the partnership.

On July 15, 1994, DCHFA filed a motion for reconsideration of the court's June 27th order. On August 31, 1994, Judge Mize reversed his June 27th order on two grounds. He concluded the 1992 amendment to D.C.Code § 45–306 should not be applied retroactively, and accordingly found the lease in violation of the statute of frauds. He also concluded that DCHFA did not waive its statute of frauds defense under § 45–306 in conceding the existence of the lease.

On November 21, 1994, Judge Mize granted the District of Columbia's motion to dismiss. At that time, the court also granted appellees' oral motion to reconsider the court's August 31st order. Ultimately, on February 17, 1995, Judge Mize reversed the August 31st order, and reinstated his initial ruling of June 27th upholding the lease.

On May 2, 1995, appellant filed a motion for reconsideration of the court's June 27, 1994 and February 17, 1995 orders. In that motion, DCHFA contended that, at the time the court initially granted summary judg-

10% applied post- as well as pre-judgment were clearly erroneous. Appellees, in a cross-appeal, argue that the trial court erred in reducing the amount of attorney's fees to which appellees were entitled and in dismissing the claim against the District of Columbia. We find that the trial court's dismissal of the claim against the District of Columbia was in accordance with the statutes that created DCHFA. *See* D.C.Code §§ 45–2111, –2121(2). Given our disposition of this appeal, we leave the other issues in abeyance pending the trial court's decision on remand.

2. Samuel Cofer was employed by DCHFA to find a building suitable for its purposes; he signed the lease on behalf of the partnership at Mr. Harper's instruction because Mr. Harper was unavailable at the time.

Subsequent to oral argument, appellees filed a motion for relief from stipulation as to the lease in the record because of certain possible discrepancies. Since, in light of our disposition, nothing in this appeal turns on any such discrepancies, we deny the motion as moot.

ment in favor of the appellees, there was a genuine dispute of material fact regarding the issue of fraud so as to make the court's ruling on summary judgment an error of law. The court denied DCHFA's motion in a memorandum order on June 26, 1995. It viewed the motion as being within the purview of Super. Ct. Civ. R. 59(e) and, as such, untimely.

The parties appeared before the Honorable Geoffrey Alprin on July 17, 1995 to address the question of damages. The parties contested the amount of cleaning expenses for which DCHFA would be reimbursed, the amount of taxes for which DCHFA would be liable, and the amount of interest that should apply to the award post-judgment. On December 5, 1995, the court entered judgment for the appellees in the amount of $267,616.19. The judge found that appellant should be reimbursed for the cleaning expenses it had paid, that appellant had conceded that it owed $3,411.30 in real estate taxes, and that the interest rate specified in the lease, 10%, applied post-judgment as well as pre-judgment. In addition, the judge found the amount of hours billed by appellees' counsel to be unreasonably high, and ordered counsel's fees to be reduced from $32,800 to $25,000.

## I.

Appellant contends the trial court erroneously granted summary judgment in favor of the appellees because the lease agreement into which the parties entered violated D.C.Code § 45–306 which, before it was amended in 1992, prohibited agents from entering into lease agreements with a duration of more than one year. Citing *Tauber v. District of Columbia*, 511 A.2d 23 (D.C.1986), the trial judge found that the lease agreement, though falling within D.C.Code § 45–306, was enforceable because DCHFA waived its statute of frauds defense when it stated in its answer and counterclaim that a lease existed.[3]

Under D.C.Code § 45–306, before it was amended in 1992, estates in real property for

more than one year were required to be created by an instrument signed and sealed by the lessor. It is undisputed in this case that the lease was not signed by the lessor, Mr. Charles Harper. Rather, it was signed by Mr. Cofer, acting as Mr. Harper's agent. Because the agreement created an interest in property for more than one year, it would, therefore, be invalid under the statute.

■ Over the years, however, this court has described some circumstances in which noncompliance with this statute, also referred to as the statute of frauds, does not prevent enforcement of an agreement. These situations include:

> (1) Where the party's own fraud is responsible for the non-compliance (equitable estoppel); (2) where the doctrine of part performance applies (promissory estoppel); and (3) where the party has admitted the contract (waiver).

*Tauber, supra,* 511 A.2d at 27. These exceptions to the application of the statute of frauds reflect the policy underlying the statute and the court's desire to prevent the statute itself from being used as an instrument of fraud. *See Kresge v. Crowley,* 47 App. D.C. 13, 17 (1917) ("[T]he rigid requirements of the statute frequently have been relaxed in courts of equity 'for the purpose of hindering the statute made to prevent frauds from becoming the instrument of fraud.'") (quoting *Purcell v. Miner (Purcell v. Coleman),* 71 U.S. (4 Wall.) 513, 517, 18 L.Ed. 435 (1866)).

In this case, the trial court found that appellant waived the statute of frauds defense when it stated in the answer and counterclaim that a lease existed. Whether this standing alone is sufficient to constitute a waiver is at least possible. A party may state the undeniable fact that a document called a lease exists, signed by that party and by an agent of the other party, while at the same time maintaining that the lease is voidable under § 45–306, as appellants have done

---

**3.** Because we resolve the question of the application of D.C.Code § 45–306 to the lease based on this issue, we need not reach the issue of whether the 1992 amendment to that statute applies retroactively.

since their answer to the initial complaint.[4]

■ But we need not explore this waiver issue further because we agree with appellees' alternative argument that, even if appellant did not waive its statute of frauds defense by admitting to the existence of the lease in the pleadings, the doctrine of part performance should preclude the application of the statute of frauds in this case because appellant occupied the building for nearly three years and paid rent, and appellee renovated the building in reliance on the lease. Appellant maintains that its actions in occupying the building and paying rent were as consistent with a tenancy at sufferance as with a long-term lease, and that there was a genuine dispute of material fact so as to preclude entry of summary judgment on the issue of whether, and to what extent, appellee expended his own funds to renovate the building in reliance on the lease.

We conclude, viewing the totality of the facts in the light most favorable to the appellant and drawing all inferences against appellees, *see Turner v. American Motors Gen. Corp.*, 392 A.2d 1005, 1006 (D.C.1978), that the doctrine of part performance was satisfied. Appellant is correct in stating that its conduct in moving into the building and paying rent was as consistent with a tenancy at sufferance as with a long-term lease. However, viewing this behavior in conjunction with the other facts undisputed in this case, it is apparent that the total actions of both parties "not only are consistent with the contract set up, but inconsistent with any other." *Kresge, supra,* 47 App. D.C. at 18.

It is undisputed that the executive director of DCHFA signed the lease, and that this person had the authority to bind DCHFA to the lease at that time.[5] In addition, it is undisputed that Mr. Harper made substantial renovations to the building on Rhode Island Avenue in reliance on the lease, and that these renovations were made *to DCHFA's specifications.* Similarly, it is undisputed that DCHFA reimbursed Mr. Harper for at least a portion of these renovations. Finally, it is undisputed that the parties acted in a manner consistent with the existence of the lease for nearly three years, until DCHFA vacated the property. Although any one of these acts, taken alone, would not be enough to bind the parties to this lease, taken as a whole they satisfy the doctrine of part performance. *See Tauber, supra,* 511 A.2d at 27. Thus, we hold that, having induced Mr. Harper to alter his property substantially in reliance on the lease, having accepted the benefits of the lease for nearly three years, and having otherwise acted in a manner entirely consistent with the existence of a long-term lease for as long as having that lease suited its purposes, DCHFA was estopped from later denying the lease's existence. We thus affirm the trial judge's ruling that the lease was enforceable.[6]

---

**4.** In *Tauber,* a case where the disputed lease was in fact signed by the landlord but not sealed as required by the statute, evidence of waiver was found, *inter alia,* in the landlord's testimony that had he known of the defect, he would have cured it and in admissions in the pleadings, stipulations and at trial. 511 A.2d at 27. The landlord first raised the statute of limitations in a motion for summary judgment and subsequently in amended pleadings. *Id.* at 25 n. 7.

**5.** We note, as this court did in *Tauber,* that the statute historically was intended to be used as a defense rather than as a basis for affirmative relief. *See Hackney v. Morelite Constr.,* 418 A.2d 1062, 1066 (D.C.1980). Although offensive use (such as by the tenant, to whom this provision of the statute of frauds does not apply) is not entirely precluded, *see Paul v. Holloway,* 124 A.2d 587 (D.C.1956), such use of the statute will be carefully examined to determine whether the party invoking the statute "committed any fraud, or

induced the [other party] to make any expenditures or otherwise to alter his position to his disadvantage." *Id.* at 589 (citing *Kresge, supra*).

**6.** In reaching our decision on this question, we have closely reviewed a trio of precedents to which we have alluded: *Paul, Hackney* and *Tauber.* In *Paul,* a case similar to this one, it was concluded that there was no substantial record developed to demonstrate the necessary part performance to overcome the requirements of the statute of frauds. In *Hackney,* on the basis of stipulated facts offered by the parties, this court recognized a possible exception to the statute grounded in part performance, but concluded, in the circumstances, that one of the parties had waived the statute and admitted the agreement. Our most recent decision, in *Tauber,* similarly reviewed these alternative approaches to finding exceptions to the requirements of the statute, and in that instance found an evidentiary waiver based on the pleadings and stipulations at trial.

## II.

Appellant also asserts that the lease, even if deemed valid, was procured by fraud, and thus contends that the trial judge erred in dismissing its motion for reconsideration as untimely under Super. Ct. Civ. R. 59(e). Appellant argues that the court erroneously considered its motion under that rule, since Super. Ct. Civ. R. 59(e) only applies to "judgments," defined in Super. Ct. Civ. R. 54 to mean "any order from which an appeal lies."

■ The Superior Court Civil Rules do not address motions for reconsideration. *See Fleming v. District of Columbia*, 633 A.2d 846, 847 (D.C.1993). When such motions are made post-judgment, they may be considered, depending on the circumstances, under a variety of rules. As a recent decision of this court makes clear, however, motions for reconsideration that are made before the court enters a final order "are not subject to the restrictive time limits imposed upon motions to reconsider final judgments," and may be entertained by the trial court at any reasonable time until a final, appealable order has been entered. *Williams v. Vel Rey Properties*, 699 A.2d 416, 419 (D.C.1997).

In this case, no final, appealable order had been entered as of the time when DCHFA filed its motion for reconsideration. Although the issue of liability had been decided, "any order ... [that] adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims ... and the order ... is subject to revision at any time before the entry of judgment adjudicating all the claims." Super. Ct. Civ. R. 54(b). Thus, the motion for reconsideration made by DCHFA could not properly be considered under Super. Ct. Civ. R. 59(e).

Without the benefit of our decision in *Williams*, the trial court felt constrained to dismiss DCHFA's motion for reconsideration as untimely under Super. Ct. Civ. R. 59(e), and thus failed to exercise the discretionary power it had. *See Williams, supra*, 699 A.2d at 420–21; *Johnson v. United States*, 398 A.2d 354 (D.C.1979). We therefore are obliged to remand to permit the trial court to rule on the merits of DCHFA's motion. *Cf. Carter v. Cathedral Ave. Co-op.*, 532 A.2d 681, 683 (D.C.1987) ("with such a motion [to alter or amend the judgment] still undisposed of on the merits, it is we, not the trial court, who lack substantive jurisdiction to proceed on the case").

## CONCLUSION

We conclude that the trial court did not err in finding that the lease was enforceable. We also conclude that appellant's motion to reconsider the partial grant of summary judgment was erroneously denied as untimely. We decline at this point to reach the issue of possible fraud in procurement without substantive resolution by the trial court of the motion for reconsideration.

Similarly, we do not interject ourselves into the several questions bearing on damages which have been raised. Giving deference to the function of the trial court, a court of first resort, those questions will turn on the court's ruling on the motion for reconsideration.

Thus we remand the case to the trial court for further proceedings consistent with this opinion.

*So ordered.*

---

We conclude, consistent with these decisions, that appellant's part performance of the agreement is amply established by the record in this case.