CONCORD ENTERPRISES, INC., et al.,
Appellants and Cross–Appellees,

v.

Christopher R. BINDER, et al., Appellees
and Cross–Appellants.

Nos. 95–CV–146, 95–CV–755.

District of Columbia Court of Appeals.

Argued Sept. 4, 1997.

Decided April 30, 1998.

Michael E. Brand, with whom Kenneth J. Loewinger, Washington, DC, and Kelly A. O'Connor, Arlington, VA, were on the brief, for appellants and cross-appellees. Concord Enterprises, Inc. and the Estate of Ernest M. Aiken, Jesse Aiken, Trustee.

Roger J. McClure, for appellants and cross-appellees Mason and Gooch.

George W. Krywolap, Baltimore, MD, for appellees and cross-appellants.

Before STEADMAN, SCHWELB, and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

This appeal arises out of a dispute between a borrower and lender[1] over the disposition of proceeds from the consensual foreclosure of a deed of trust on the borrower's eleven-unit apartment building located at 4811 Minnesota Avenue, N.E. ("4811") in the District of Columbia. The principal issue is whether the lender can recover from the proceeds of the sale (1) the amount the lender paid to satisfy a more than $40,000 water and sewer bill on the property and (2) the attorney's fees incurred in the foreclosure. The trial court held that the lender could not recover either of these items. Because the findings of fact by the trial court in this admittedly complex litigation are insufficient to permit meaningful appellate review, we remand the case for further proceedings.

## I. The Facts

The borrower, for all practical purposes, is Christopher R. Binder, general partner of two District of Columbia limited partnerships—Property Partnership and 4811 Minnesota Avenue, N.E. Limited Partnership ("Minnesota Avenue Partnership")—and also the owner of B & B Management Company ("B & B"). The lender is the Estate of Ernest M. Aiken ("Estate"). The Estate retained Concord Enterprises, Inc. ("Concord"), operated by Benjamin H. Aiken, to manage its real estate holdings and promissory note collections. To minimize confusion, we refer to Concord and the Estate as the single entity "Estate/Concord."

The story begins on May 8, 1978, when the Estate sold 4811 to F & M Associates, a partnership consisting of Charles Fadeley and James Monard. Messrs. Fadeley and Monard executed a promissory note in favor of the Estate, secured by a deed of trust, in the principal amount of $79,200 with 8.5% annual interest. The deed of trust provides, *inter alia*, that (1) failure to pay "proper costs, charges, commissions, half commissions and expenses" constitutes default; (2) the trustee shall deduct such amounts from any foreclosure sale proceeds before applying

---

1. More precisely, the dispute involves a purchase money deed of trust. As will be seen, the "lender" was the former owner of the apartment house, which was sold in 1978. The "borrower" is the successor in interest to the 1978 buyer.

the proceeds against the note balance; and (3) the note maker shall reimburse the holder for reasonable attorney's fees incurred in enforcing the deed of trust.

The Property Partnership purchased the property from F & M Associates later in 1978 and subsequently sold it to the Minnesota Avenue Partnership in 1982. B & B, controlled by Binder, managed the premises from 1982 until the commencement of this litigation in 1992.

After 1982, various transactions affected both 4811 and another property owned by the Property Partnership located at 4810 Quarles Street, N.E. ("4810") in the District. In 1984, 4810 had outstanding accumulated water and sewer charges totaling $12,446.09. Unable to satisfy this debt, Property Partnership and Estate/Concord, which held a deed of trust on 4810 (as well as 4811), entered into a settlement agreement whereby Estate/Concord agreed to pay the debt contingent on its becoming the successful bidder at a foreclosure auction. In return, Property Partnership allowed Estate/Concord, by methods unrevealed in the record, to add the $12,446.09 sum to the principal balance due on the 4811 promissory note.[2]

By May 1992, the outstanding water bill for 4811 reached $40,844.12. Again unable to pay, the parties signed a foreclosure agreement on June 5, 1992, pursuant to which Estate/Concord agreed, in pertinent part, to (1) assume management of and initiate foreclosure proceedings on 4811; (2) not pursue any deficiency against Binder or the limited partners of the Minnesota Avenue Partnership with regard to the trust obligation; and (3) "assume responsibility and liability for all outstanding water and sewer bills and charges without recourse against Binder or the limited partners involved in the Minnesota Avenue Limited Partnership." In return, the Minnesota Avenue Partnership agreed, *inter alia*, to provide relevant management

documents, current rent schedules and unit keys; to pay outstanding renovation costs; and to turn over security deposits to Estate/Concord. The agreement specified that its purpose

> is to render the transfer of 4811 Minnesota Ave., N.E. to Mr. Ben Aiken et al. as swiftly and as smoothly as possible and to render Mr. Binder and his limited partners as free of outstanding obligations and responsibilities as is possible under this agreement.

In accordance with the June 5 agreement, notice of the prospective 4811 foreclosure sale, advertised as an "all cash" transaction, was issued on June 23, 1992, by Douglas K. Goldsten, Auctioneers, Inc. To facilitate a profitable sale, Aiken contacted Robin Epstein, a real estate agent, to locate interested purchasers. Epstein soon produced Thad Wins who, on July 10, 1992, executed a contract with Estate/Concord to purchase 4811 for $150,000. A first addendum to the contract, signed July 24, 1992, conditioned the sale on Estate/Concord becoming the successful bidder at the foreclosure auction.[3] It also provided that Wins would fully assume responsibility for the outstanding water and sewer bill. A third addendum, effective September 15, 1992, clarified the transaction's financing: Wins would make a $35,000 cash down payment and sign a first deed of trust and note in the amount of $115,000 with 10 percent annual interest. This addendum also deleted Wins' responsibility for the nearly $41,000 water and sewer bill, transferring it, instead, to Estate/Concord.

Some weeks prior to the execution of this Third Addendum, on July 27, 1992, 4811 was sold at auction. The parties dispute both the identity of the record purchaser and whether the transaction was "all cash" or for part cash and part long term debt. Thad Wins' name appears on the auctioneer's report as "purchaser" for the amount of $150,000, but

---

2. The sum of $12,446.09 was added to the 4811 promissory note on January 25, 1985, and the Estate/Concord paid the outstanding water bill on December 19, 1985. The parties dispute whether Estate/Concord actually became the successful bidder at the 4810 foreclosure auction.

3. Estate/Concord alleges that this clause of the contract was misprinted. As proof, it points to the September 30, 1992 Deed of Trust executed by Wins, Substitute Trustee Mason, and Aiken which refers to the prior obligation of Wins, not Estate/Concord, to be the successful bidder. Nonetheless, the trial court concluded that Estate/Concord purchased 4811.

both parties agree that Robin Epstein, Estate/Concord's agent, placed the winning bid. There is ample additional evidence to support both parties' conflicting positions.

On September 30, 1992, the settlement of the foreclosure sale took place. The substitute trustees treated the sale as if made to Wins for $35,000 in cash and a $115,000 promissory note. Against these proceeds they applied an $80,808.18 note balance—evidently including the $12,446.09 water and sewer bill from 4810 Quarles Street—and deducted $42,083.95 in water and sewer charges and $56,044.13 in attorney's fees and costs. As a result of these deductions, no surplus remained. This appeal centers on the propriety of the deductions and the characterization of the foreclosure transaction.

Some three weeks prior to the settlement, on September 11, 1992, Estate/Concord and the substitute trustees brought suit for permanent injunctive relief against Binder individually and as general partner of Property Partnership and Minnesota Avenue Partnership, alleging breach of the June 5, 1992 foreclosure agreement. The complaint asserted that Binder was interfering with the management of 4811 and attempting to disrupt the foreclosure of the property. The trial court granted a preliminary injunction on September 23, 1992, ordering Binder to cease interference with Estate/Concord's management of 4811 and Concord to provide Binder a financial accounting for the period of its management. Subsequently, the defendants, seeking to set aside the foreclosure sale, counterclaimed for breach of contract, breach of fiduciary duty, and conversion. The plaintiffs, attempting to recover, *inter alia*, attorney's fees and any deficiency on the promissory note, then amended their complaint to include several legal causes of action of their own and a prayer for punitive damages.

The trial court conducted a ten-day bench trial and issued a lengthy order from which both parties now appeal. The trial court held, in relevant part, that (1) Estate/Concord purchased 4811 at the foreclosure sale for $150,000 cash; (2) the only proper deductions from the sale proceeds, under D.C.Code § 45–717 (1996), were losses to Estate/Concord from managing the property prior to foreclosure and actual foreclosure costs, not the water and sewer charges; (3) both parties breached the June 5, 1992 foreclosure agreement and, therefore, each party must bear its own attorney's fees and costs; (4) the substitute trustees under the 4811 deed of trust, Randall S. Mason and Lois M. Gooch, breached their fiduciary duties by improperly accounting for the sale proceeds of 4811;[4] and (5) Estate/Concord was liable for payment of $78,501.74, the net proceeds of the foreclosure sale, to Binder at double interest (12% per annum) plus reasonable attorney's fees incurred in the collection of that amount under D.C.Code § 45–2807 (1996).[5] The appellants now before us challenging these trial court determinations are Estate/Concord and substitute trustees Mason and Gooch. The appellees are Binder, the two limited partnerships, and B & B.

## II. Water and Sewer Bill

We first address appellants' challenge to the trial court's determination that the amount of the unpaid water and sewer bill, some $42,083.95, could not be deducted from the foreclosure sale proceeds. In doing so, the trial court relied upon D.C.Code § 45–717, which provides that where the foreclosing creditor is the purchaser at the foreclo-

---

4. The trial court imposed a $200 civil fine against both Mason and Gooch and ordered that each repay the $200 fee they received as compensation for serving as substitute trustees.

5. This order was issued December 14, 1994. The appellants filed a notice of appeal on January 5, 1995. The trial court later recognized that § 45–2807 does not apply and therefore that double interest was improperly assessed. *See* D.C.Code § 45–2802 (1996). Thus, in an order dated May 19, 1995, it sua sponte reduced the amount of interest due from 12% (double 6%) to

5%. The 5% figure appears to result from a mistake by the trial court in correcting the December 14, 1994 order. In the May 19, 1995 order, the trial court mistakenly cited the base interest rate awarded by the earlier order to be 5% instead of the 6% figure actually appearing there. We hereby vacate the May 19, 1995 order, which was invalid in any event since the judgment was already on appeal, with instructions to the trial court to compute interest, if necessary pending the resolution of the other remanded issues, at a rate of 6% per annum.

sure sale, the creditor is liable to pay to the trustee only "the excess of the purchase money over his debt, together with such additional amount as may be necessary to defray the expenses of the sale." We think that the trial court erred in too narrowly reading the concept of "debt" in § 45–717 in concluding that "the only proper deductions from the proceeds of the sale are any losses from managing the property during the period the 'Estate'/'Concord' was 'lender in possession,' plus actual foreclosure costs." Section 45–717 is a provision intended to allow a creditor who becomes the purchaser at a foreclosure sale to apply against the bid price the amount of the total indebtedness secured by the deed of trust, so that the creditor shall be obligated to turn over to the trustee only the amount of the bid price in excess of that indebtedness and the expenses of the foreclosure sale itself. However, the amount secured by the deed of trust may include not only the original loan but also any additional amounts secured pursuant to the terms of the deed of trust or other applicable instrument. Furthermore, § 45–717 deals only with the relationship between the creditor and the trustees and does not necessarily determine the amount that the trustees in turn may be obligated to release to the borrower or other claimants of any net surplus arising from the foreclosure sale.

In this regard, the trial court's order, in its conclusions of law, appears to give no consideration to the effect of provisions of the deed of trust and the foreclosure agreement on the deductibility of the accrued water and sewer charges from the sale proceeds. Since there are numerous factual determinations that must be made relative to the interpretation of both contracts,[6] and because many of these determinations require the weighing of witness credibility, remand is appropriate. *See Lenkin v. Beckman,* 575 A.2d 273, 278 (D.C.1990) (ordering remand where resolution of disputed issues turns on the credibili-

ty of evidence and where additional legal questions would likely arise from new factual findings).

■■■ As we read the record, there are three authorities that, depending on their construction, may affect the deductibility of the water and sewer charges from the sale proceeds. The first authority is the deed of trust itself. The trustee must follow the dictates of the deed of trust and other contracts regarding disbursement of foreclosure sale proceeds. *Stuart v. American Sec. Bank,* 494 A.2d 1333, 1339 (D.C.1985); *Paroni v. Quick,* 211 A.2d 765, 768 (D.C.1965); *National Life Ins. Co. v. Silverman,* 147 U.S.App. D.C. 56, 72, 454 F.2d 899, 915 (1971). Here, the deed of trust stipulates that upon sale of the property the proceeds are to be applied, first, to pay "all proper costs, charges and expenses" and, second, to pay "whatever may remain unpaid" of the note. Whether "charges" encompasses the water and sewer bill is a matter of contract interpretation initially within the province of the trial court. *Urban Masonry Corp. v. N & N Contractors, Inc.,* 676 A.2d 26, 31 (D.C. 1996). Such a determination also would appear basic to the resolution of the water and sewer bill controversy.

Second, the foreclosure agreement allocates to Concord "responsibility and liability for all outstanding water and sewer bills and charges ... without recourse against Mr. Binder or the limited partners involved in the Minnesota Ave. Limited Partnership." The agreement further states that Concord will "pay all outstanding water and sewer bills." Concord argues, and it elicited testimony to the effect, that the agreement was intended to insulate Binder and the limited partners from personal liability but not to deprive it of recourse against the Minnesota Avenue Partnership as a separate entity, at least to the extent that the water and sewer bill could be deducted from the sale proceeds.[7] Binder

---

6. Although it is the role of the appellate court to review questions of law de novo, D.C.Code § 17–305 (1997); *Hopkins v. Akins,* 637 A.2d 424, 427 (D.C.1993), including whether a writing is ambiguous, *American Bldg. Maintenance Co. v. L'Enfant Plaza Properties, Inc.,* 655 A.2d 858, 861 (D.C.1995), because there are so few findings of fact pertaining to the operation of the deed of

trust and the foreclosure agreement, we defer here to the trial court to address the matter in the first instance.

7. Indeed, even if the foreclosure agreement entirely absolves all parties from personal liability for the water and sewer charges, it does not necessarily follow that payment of that indebted-

contends, however, also with testimonial support, that the foreclosure agreement fully modified the deed of trust in that Concord lost the right to set off the water and sewer charges from the foreclosure sale proceeds. To resolve the water and sewer bill issue on remand, the trial court must reconcile these conflicting accounts of the parties' intent in entering the foreclosure agreement and determine whether the agreement supersedes any commitment under the deed of trust to deduct the charges.[8] *See Lenkin, supra,* 575 A.2d at 277 ("when a creditor pursues a partnership debt where the partners, by contract with the creditor, have insulated themselves from personal liability, the creditor will not necessarily be precluded from reaching partnership property in the partners' hands. Such preclusion will occur only if the contract, when properly interpreted, prevents a claim against both 'personal' *and* 'partnership' property.").

■ Finally, D.C.Code § 43–1529 (1997 Supp.) provides that the District of Columbia, upon filing a certificate of delinquency, obtains a continuing lien against real property with accrued water and sewer charges. We have stated that where there is a "senior encumbrance or lien on the property ... the trustee must satisfy that lien before applying the sale proceeds to the obligation secured by the deed of trust." *Jefferson Fed. Sav. & Loan Ass'n v. Berks Title Ins. Co.,* 472 A.2d 893, 894 (D.C.1984).[9] Also, in the event of a surplus the trustee must satisfy subordinate

mortgages, judgments, or liens against the property before turning it over to the mortgagor. *Paroni, supra,* 211 A.2d at 768. In the instant case, the trial court made no finding, and there is scant reference in the record, as to whether the District of Columbia filed the requisite certificate to trigger the continuing lien. If a lien were filed, the $42,083.95 water and sewer charges may have been properly deducted on that basis alone. This question may, if relevant, be further explored on remand.[10]

■ Superior Court Civil Rule 52(a) requires that the trial court, in every case tried without a jury, state sufficient findings of fact and conclusions of law to permit meaningful appellate review. *United States Fidelity & Guar. Co. v. Kaftarian,* 520 A.2d 297, 299 (D.C.1987); *Tauber v. District of Columbia,* 511 A.2d 23, 28 (D.C.1986). "This means there must be findings on material issues." *Tauber, supra,* 511 A.2d at 28; *accord District of Columbia v. Group Ins. Admin.,* 633 A.2d 2, 22 (D.C.1993) (observing that part of appellate court's role is to assure that trial court resolves all relevant issues). Insufficient findings requires remand, *Tauber, supra,* 511 A.2d at 28, because "[w]ithout them, any ruling on our part as to the trial court's decision would be an exercise in speculation." *Don't Tear it Down, Inc. v. District of Columbia,* 395 A.2d 388, 391 (D.C.1978). "Where the trial court provides only conclusory findings, unsupported by subsidiary findings, or by an explication of the court's

---

ness is relieved from the security of the deed of trust. Debts may be secured by encumbrances on property even in the absence of any personal liability; e.g., in nonrecourse financing.

Here, on the face of things, it is not readily apparent what economic motivations would have led Estate/Concord in a foreclosure agreement to assume outright a water and sewer obligation and surrender an otherwise extant right to reimbursement from the proceeds of foreclosure. If on remand the trial court finds that Estate/Concord did so agree, the court should also elucidate the business realities supporting that decision.

8. As noted above, the trial court held that both parties breached the foreclosure agreement. The court, on remand, may have to consider the sequence of the breaches if it is found that the agreement does preclude the deduction of the water and sewer charges from the proceeds of sale.

9. This general assertion, to be sure, must be analyzed with considerable qualification, for example, the actual terms of the foreclosure sale and the consent of the prior lienholder. A first mortgagee cannot be forced into a prepayment of a loan. It does appear, however, that the foreclosed-upon owner in normal circumstances cannot complain if the trustee uses proceeds of a sale to satisfy a prior encumbrance.

10. Likewise, the court may examine other factual aspects that may bear on the issue of Estate/Concord's and the trustees' rights and duties with respect to the water and sewer charges, such as the effect of the civil action instituted by the District for payment of the charges and any arrangements that Estate/Concord made for such payment.

reasoning with respect to the relevant facts, a reviewing court simply is unable to determine whether or not those findings are clearly erroneous." *Kaftarian, supra,* 520 A.2d at 299–300 (internal quotations omitted). Here, the trial court's analysis of the water and sewer bill was insufficient because it did not address the interplay between § 45–717, the deed of trust, the foreclosure agreement, and § 43–1529. We must remand for that purpose, including appropriate further findings as required.

### III.  Attorney's Fees and Costs

■ We next address the trial court's determination that appellants were not entitled to any attorney's fees from the foreclosure proceeds. Here too, we find the trial court's findings to be insufficient. The trial court found that "both parties breached the June 5, 1992 [foreclosure] agreement, and, therefore, both plaintiff and defendant are responsible for their own attorney's fees and costs." This analysis can be correct, however, only if the foreclosure agreement somehow modified the terms of the deed of trust and if the responsibility for the breach was the lender's.

■ While generally "each litigant bears his or her own attorney's fees and litigation expenses," an exception to this "American Rule" arises when the parties allocate the fees and expenses among themselves by contract. *Urban Masonry, supra,* 676 A.2d at 33. As we observed in *Central Fidelity Bank v. McLellan,* 563 A.2d 358, 360 (D.C.1989),

> where a contractual agreement expressly provides for the payment of attorney's fees, the trial court's discretion is limited to ascertaining what amount constitutes a 'reasonable' fee award. Otherwise put, absent public policy considerations or other unusual circumstances, the duty of the trial court is to give meaning to the full agreement of the parties, as interpreted by controlling case law.

Here, the deed of trust awards to the lender "all costs and expenses incurred in respect [to the debt obligation], including reasonable counsel fees incurred or paid ... on account of any litigation at law or in equity which may arise in respect to this trust ... with interest on all such costs[.]" Such a provision will generally be enforced so long as it does not reimburse a party for greater than reasonably incurred expenses. *Wisconsin Ave. Assocs., Inc. v. 2720 Wis. Ave. Coop. Ass'n,* 441 A.2d 956 (D.C.1982); *Manchester Gardens v. Great W. Life Assurance Co.,* 92 U.S.App. D.C. 320, 205 F.2d 872, 877–78 (1953).

Contrary to this principle, the trial court here appears to have treated Concord's claim for attorney's fees and costs as a discretionary decision. That can be true, however, only if the foreclosure agreement and events relating thereto somehow overrode the terms of the deed of trust with respect to attorney's fees. Furthermore, even if a breach of the foreclosure agreement somehow could negate the lender's rights under the deed of trust, presumably such a negation would depend upon the lender, rather than the borrower, being the first one to breach the agreement in a material respect.

The trial court is silent as to these considerations. We therefore remand for an assessment, including any necessary fact-finding, of whether the foreclosure agreement or any breach thereof by the lender relieved Binder of his liability under the deed of trust, or if not, for an inquiry into which fees and costs claimed by Concord fit within the deed of trust's provisions and a determination of their reasonableness.

### IV.  Other Issues

Appellants' remaining issues can be dealt with more summarily.

■ A. *Purchaser at the Foreclosure Sale.* Appellants challenge the trial court's determination that Estate/Concord, not Wins, was the purchaser at the foreclosure sale. It is well established that trial court findings of fact are given great deference and will not be disturbed unless they are plainly wrong or without evidence to support them. D.C.Code § 17–305 (1997); Super. Ct. Civ. R. 52(a); *Butler v. Whitting,* 647 A.2d 383, 384 (D.C.1994). In light of this standard, we find no basis to disturb the trial court's determination that Estate/Concord was the de facto

purchaser of 4811. Estate/Concord and Wins entered into a sales contract before the foreclosure auction that listed Estate/Concord as the seller. An addendum to the contract expressly made the deal contingent on Estate/Concord "becoming the successful bidder at a foreclosure auction." Additionally, there was testimony by both Wins and Aiken which identified Estate/Concord as the intended purchaser at the auction.[11] Furthermore, despite the fact that Wins' name appears on the auctioneer's report, Robin Epstein, Estate/Concord's agent, placed the winning bid in a transaction advertised as "all cash" and received a $9,000 commission from Estate/Concord. In sum, since there is ample supporting evidence in the record, we affirm the trial court's finding that Estate/Concord purchased 4811 and then resold it to Wins.

B. *Note Balance.* The appellants assert that the trial court's computation of the note balance is unsupported by the record. We are unable to review the computation because the trial court offered nothing but the conclusion that "the Note Balance owed by Christopher Binder to the 'Estate'/'Concord' is $67,827.44." Specifically, the trial court made no mention of the disputed $12,446.09 water and sewer bill from the 4810 property or the reason for the decision not to include that amount in the note balance. The trial court's reasoning and calculation with respect to the note balance should be addressed on remand.

C. *Breach of Fiduciary Duty and Penalties.* Finally, the substitute trustees argue that the trial court erred in finding a breach of fiduciary duty, ordering the return of their trustee's fees, and imposing a civil fine. Because of the insufficiency of the trial court's findings regarding the water and sewer bill and attorney's fees, we are unable to address the breach-of-fiduciary-duty and trustee's fee matters. These are issues for the trial court to revisit on remand. As to the civil fines, we reverse because D.C.Code § 45–1946(c) (1996), the statute relied upon by the trial court, cannot be invoked against "[a]ny trustee . . . acting under authority of a power of sale in a . . . deed of trust. . . ."

*See* D.C.Code § 45–1931(3) (1996). In any event, there has been neither a prosecution by the Corporation Counsel nor the requisite administrative proceedings mandated by D.C.Code §§ 6–2701 to 2723 (1995 & 1997 Supp.).

## V. Conclusion

To summarize, this is a difficult case factually and legally, both for the trial court and for us on appeal. As we see it, the major gaps in the trial court's order are as follows. First, the trial court failed to consider the application, if any, of the deed of trust, the June 5, 1992 foreclosure agreement, and relevant statutory law to the deductibility of certain charges and expenses, most notably the 4811 water and sewer bill and attorney's fees. The court merely recited, without adequate explanation, that various charges and expenses, including the water bill and attorney's fees, "are not proper deductions." Second, the trial court stated in conclusory fashion that "the note balance owed by Christopher Binder to Estate/Concord is $67,827.44" without offering any explanation for the origin of this figure or for the basis of its decision to deny the $12,446.09 note balance increase relating to the 4810 Quarles Street water bill. Finally, the trial court found that both Estate/Concord and Binder breached the June 5, 1992 foreclosure agreement, but it did not determine which party, if either, breached first and the effect thereof with respect to the second breach. As a result of these gaps and the others noted above, we are unable to meaningfully address, as matters of law, the major issues raised on appeal other than the finding as to the purchaser at the foreclosure sale, which we affirm, and the propriety of the imposition of the civil fines on the trustees, which we reverse. Otherwise, the judgment appealed from is vacated and the case remanded for further proceedings consistent with this opinion.

*So ordered.*

---

11. Testimony was also elicited about Aiken's motivation to recast the foreclosure sale as made to Wins instead of Estate/Concord to avoid double transfer taxes.