ALPARK DISTRIBUTING, INC., APPELLANT, *v.* JOE POOLE AND CAROL POOLE, RESPONDENTS.

No. 9674

September 25, 1979                                      600 P.2d 229

[Rehearing denied November 29, 1979]

*Stewart & Horton, Ltd.,* and *Daniel W. Stewart,* Reno, for Appellant.

*Gregory D. Corn,* Reno, for Respondents.

---

[1]The Chief Justice designated the Honorable David Zenoff, Senior Justice, to sit in this case. Nev. Const. art. 6, § 19; SCR 244.

## OPINION

*Per Curiam:*

Appellant (hereinafter referred to as "Alpark") is an independent jobber of petroleum products which owned or leased ten service stations in northern Nevada, one of which was located in Battle Mountain. Four of these stations were subleased under an oral agreement whereby Alpark furnished all the petroleum products which the sublessee sold on a commission basis.

In 1974, Joe and Carol Poole (hereinafter "the Pooles") were living in a house trailer in Lovelock, and Joe was receiving insurance benefits as a result of an industrial accident. He operated a motorcycle business from his home and, in addition, was receiving training in the operation of a gold and silver mill. Carol was employed as a part-time waitress.

Alpark's vice president Al Simpkins, told the Pooles that Alpark had a ten-year lease on a service station in Battle Mountain, with two five-year options to extend the lease. Simpkins represented to the Pooles that if they operated the station, (1) they would receive a commission based upon gallons sold; (2) that Joe Poole could operate his motorcycle shop from the station; (3) Alpark would provide insulation and new canopy lights, and repair the driveway and broken windows; (4) tires, batteries and accessories would be provided on a consignment basis; (5) the Pooles could continue operating the station as

long as they earned money for Alpark; and, (6) the agreement with Alpark would continue for eight years, the balance of the Alpark lease on the premises. In reliance upon these representations, the Pooles moved to Battle Mountain.

At the subsequent trial there was undisputed testimony that the expense of moving the Pooles's house trailer was paid by Alpark, and it was also undisputed that Carol quit her job in Lovelock and that Joe paid the cost of moving his motorcycle business from Lovelock to Battle Mountain. The Pooles worked in the Battle Mountain service station twelve to fourteen hours a day and they made a profit for Alpark. During the Pooles's first six months at the station, they made $8,206 and the year following, they made $19,681.

In addition to selling gasoline, Joe operated a motorcycle shop from the service station. On December 10, 1975, Alpark's attorney mailed Joe a letter stating that Joe was devoting too much time to his motorcycle shop, was not keeping the station open a sufficient number of hours per day, and was closing the station too many days each month. The letter added that if the Pooles wanted to continue operating the station, they would be required to pay Alpark $500 each month for rent. Upon receiving the letter, the Pooles stopped paying Alpark for the gasoline and other products sold on consignment.

Alpark brought an action on May 30, 1976, seeking restitution of the gas station, unpaid rent and attorney's fees. Upon posting a $20,000 bond, Alpark was granted temporary restitution of the station. The Pooles counterclaimed for damages. A jury trial resulted in judgment in favor of the Pooles, in the amount of $46,088.40.

In this appeal, Alpark contends (1) the alleged contract was within the statute of frauds, and the evidence admitted at the trial was insufficient as a matter of law to support an estoppel to assert the statute of frauds because the Pooles suffered no detriment; and (2) the refusal to give proposed ''Jury Instruction A'' was error, notwithstanding Alpark's failure to object to the refusal at trial.

1. It is uncontested that the agreement between the parties to this lease was made orally and was for a period of time in excess of one year and, therefore, the agreement fell within the statute of frauds. NRS 111.205; NRS 111.210; NRS 111.220; Zunino v. Paramore, 83 Nev. 506, 435 P.2d 196 (1967). However, contracts otherwise unenforceable because of the statute frauds may be enforced under the doctrine of estoppel. See Zunino v. Paramore, supra. This doctrine is properly invoked, according to Justice Roger J. Traynor of the California

Supreme Court, whenever "unconscionable injury . . . would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract. . . ." *Monarco v. Lo Greco*, 220 P.2d 737, 739 (Cal. 1950).

The Pooles believe that promissory estoppel applies in the present instance because (1) representations were made by Al Simpkins, on behalf of Alpark, to the Pooles, and (2) the Pooles relied upon the representations to their actual and substantial detriment. Alpark contends, on the other hand, that the trial court should have removed the case from the jury as a matter of law because the statute of frauds barred recognition of the oral contract by the jury. Alpark disagrees with the trial court's ruling that if sufficient factual evidence existed, the jury could reject the bar imposed by the statute of frauds and recognize the agreement between the parties. The ruling of the trial judge is correct.

Detrimental reliance sufficient to create an estoppel does not necessarily require a showing of financial or pecuniary loss. By merely abandoning his home and moving to the land of another in reliance upon the promise that the land will someday belong to him, a person can incur detriment. *See* Greiner v. Greiner, 293 P. 759 (Kan. 1930).

Here, the record reflects that the jury had sufficient credible factual evidence to find that Alpark made several representations to the Pooles which induced the Pooles to move from Lovelock to Battle Mountain, to their detriment.

2. The record reveals that while there was discussion of proposed "Jury Instruction A" at trial, Alpark made no formal objection to its refusal and did not state any grounds for an objection. NRCP 51 provides, in part, that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the ground of the objection." We therefore decline to consider this issue on appeal.

Accordingly, we affirm.[1]

---

[1]The Governor, pursuant to Nev. Const. art. 6, § 4, designated the Honorable William P. Beko, Judge of the Fifth Judicial District, to sit in place of THE HONORABLE NOEL E. MANOUKIAN, Justice, who was disqualified.