ALADDIN HOTEL CORPORATION, APPELLANT, *v.* GENERAL DRAPERY SERVICES, INC., RESPONDENT.

No. 10731

June 4, 1980                                           611 P.2d 1084

*Jones, Jones, Bell, Close & Brown,* and *Bruce K. Collmar,* for Appellant.

*Bilbray, Gibbons & Pitaro,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

The dispute in this case arose out of the construction of the Aladdin Theatre for the appellant Aladdin Hotel Corporation. Respondent General Drapery Services, Inc., supplied materials and performed services in the construction of the theatre. Disagreements arose between General Drapery and appellant Aladdin over the quality of the performance of General Drapery which culminated in the parties reaching a compromise settlement. General Drapery later sued Aladdin, alleging that the compromise settlement had not been performed; Aladdin interposed the defense of accord and satisfaction. The district court granted summary judgment for General Drapery; this appeal followed. Because we believe that there are genuine issues of fact to be resolved, we reverse and remand for trial.

General Drapery worked on the construction of the Aladdin Theatre under purchase orders issued by Joseph Locricchio, general contractor for the project and Aladdin's agent. There was some question over the quality of General Drapery's performance of the work. Locricchio, as general contractor, claimed that Aladdin was entitled to an offset from the face amount of the purchase orders of over $57,000 because of General Drapery's alleged incomplete performance. General Drapery, however, submitted bills for the entire face amount of the purchase orders.

On August 12, 1976, Locricchio met with James Belmont, president of General Drapery. According to Locricchio's affidavit, they agreed to settle the dispute on the following terms: Aladdin would not press its claim for a $57,000 offset; Aladdin would make payments to General Drapery which would bring its total payments to $264,889.96; and General Drapery would execute a waiver of its lien rights on the Aladdin property[1] in the amount of $294,889.96, which was the total amount of the purchase orders. The waiver of the lien was executed the same day. The following day Aladdin issued checks, which were accepted by General Drapery, which brought the total amount paid to precisely $264,889.96.

According to Belmont, the waiver of the lien agreement was

---

[1]No liens had ever been filed by General Drapery against the property, according to the record before us.

intended by the parties to be a complete and final written settlement of their dispute. He claimed that General Drapery intended to waive only its right to file for a lien and did not intend to accept any amount less than $294,889.96 as a settlement.

Over a year and a half later, General Drapery sued Aladdin, by way of an amended complaint,[2] for the $30,000 difference between what it alleged was due under the waiver of lien agreement and what it had received. Aladdin's answer admitted payment of $264,889.96 and the execution of the waiver of lien agreement, but denied the $30,000 indebtedness. The answer pleaded the affirmative defenses of accord and satisfaction, and release. General Drapery moved for summary judgment, which the district court granted without findings of fact or conclusions of law. Aladdin appeals.

Respondent contends that summary judgment was proper because any evidence submitted by Aladdin at trial would be oral testimony and, thus, inadmissible to vary the terms of the written agreement of August 12, 1976, the lien release. We disagree. The threshold question in this instance is whether the written lien release was intended by the parties to be the agreed integration of the entire bargain between them. *See* Child v. Miller, 74 Nev. 223, 327 P.2d 342 (1958); United States v. Aetna Casualty & Surety Co., 480 F.2d 1095 (9th Cir. 1973). Thus if the waiver of lien agreement was intended by the parties to be merely a shield for Aladdin against possible lien liability and as evidence of clear title to facilitate the making of loans on the property, and not a memorialization of the entire oral agreement between the parties, parol evidence may be admissible to show the terms of the "separate and independent oral agreement" without violating the rule that such terms may not be inconsistent with those of the written agreement. Alexander v. Simmons, 90 Nev. 23, 518 P.2d 160 (1974).

---

[2]General Drapery originally filed suit in this action against Maryland Casualty Co., the surety on Locricchio's contractor's bond, on April 14, 1977, for $30,000, the sum which General Drapery now alleges to be due from Aladdin. The district court entered summary judgment for General Drapery for the full amount against Locricchio and for the full amount of the bond against Maryland Casualty. Only Maryland Casualty appealed that order. While the disposition was on appeal to this Court, the district court vacated its order granting summary judgment against Locricchio; and since there was then no finding of liability against Locricchio upon which Maryland Casualty's liability could rest, we remanded the part of the case on appeal for further proceedings, Maryland Casualty Co. v. General Drapery Services, Inc., No. 10466, September 22, 1978. Meanwhile, General Drapery was allowed to file an amended complaint, on January 13, 1978, naming Aladdin as a defendant.

Scrutiny of the written agreement suggests that it is ambiguous with respect to whether it was intended by the parties to be a complete integration of the terms of their entire bargain. The language of the document provides only that General Drapery "do [sic] hereby waive and release to the owners of said premises [the Aladdin Theatre for the Performing Arts] . . . any and all liens or right to liens upon said land, or upon the improvements now or hereafter thereon, or upon the monies or other considerations due or to become due from the owner . . . . The premises as to which said liens or right to liens are hereby released is: [the Aladdin Theatre for the Performing Arts]." By its own terms, the document only refers to General Drapery's lien rights against the premises (or arguably against any sums paid to the general contractor for the project).

It is clear that the character of the written instrument itself is far from obvious. In such a situation, where it may "be properly inferred that the parties did not intend the written paper to be a complete and final settlement of the whole transaction between them," Alexander v. Simmons, 90 Nev. at 24, 518 P.2d at 161, parol evidence is admissible. On appeals of summary judgments, all inferences are reviewed in favor of the party moved against. Kaminski v. Woodbury, 85 Nev. 667, 462 P.2d 45 (1969). Since the intention of the parties is a crucial issue when the defense of accord and satisfaction is raised, Johnson v. Utile, 86 Nev. 593, 472 P.2d 335 (1970), and that question is one of fact, Black v. Denver United States National Bank, 362 F.2d 38, 41 (8th Cir.), cert. denied, 385 U.S. 990 (1966), summary judgment was improper in the instant case.

Respondent also contends that summary judgment was justified because the affidavit of Dennis Piotrowski submitted by Aladdin in opposition to the motion was insufficient. We need not decide whether Piotrowski's affidavit was sufficient. The record in this case shows that the district court had before it the affidavit of Joseph Locricchio, which affidavit fully complies with the requirement of NRCP 56(e) and Saka v. Sahara-Nevada Corp., 92 Nev. 703, 705, 558 P.2d 535, 536 (1976), that such affidavits "must be made upon the affiant's personal knowledge, and there must be an affirmative showing of his competency to testify to them."

We conclude, therefore, that there are genuine issues of material fact with respect to the intended effect of the waiver agreement. We therefore must reverse the order of the district court and remand the cause for trial on the merits.