**In re The ROSE FINE JEWELRY, INC., Debtor.**

**Rose SLONIM and The Rose Fine Jewelry, Inc., a Nevada corporation, Appellant,**

v.

**HUGHES PROPERTIES, INC., a Nevada corporation, Respondent.**

**Bankruptcy No. BK–S–87–03293 RCJ.**

**Civ. No. CV–S–88–488–PMP (RJJ).**

United States District Court,
D. Nevada.

June 5, 1989.

Donald E. Brookhyser, Las Vegas, Nev., for appellant.

Todd M. Touton, Lionel, Sawyer & Collins, Las Vegas, Nev., for respondent.

## OPINION

PRO, District Judge.

This is an appeal of a final order ("Findings of Fact and Conclusions of Law" and

"Writ of Restitution") entered by the Bankruptcy Court granting a Motion for Relief from Stay under 11 U.S.C. § 362. The underlying action arose from a landlord/tenant dispute in which the landlord (Respondent, "Hughes" herein) terminated a written month-to-month lease (the "Monthly Lease") under which the tenant (Appellant, herein "Slonim" or "Rose Jewelry" as the case may be) had rented an area within Hughes' premises for use as a jewelry shop.

Upon Hughes' delivery of notice of termination of the Monthly Lease, Rose Jewelry commenced a proceeding in state court to enjoin its eviction, and to seek enforcement of a written, unsigned long-term lease (the "Unsigned Lease") in reliance upon which, Slonim asserts she established Rose Jewelry. Rose Jewelry filed a petition for relief under Chapter 11 of the Bankruptcy Code, whereupon the state court case was removed to the Bankruptcy Court.

Hughes filed a motion for relief from stay, and a hearing was held on December 22, 1987, and continued on January 6, 1988. At the conclusion of the hearing, the Bankruptcy Court entered an order finding, *inter alia*, that the Unsigned Lease was unenforceable and granting Hughes relief from stay to terminated Rose Jewelry's occupancy.

A Notice of Appeal (# 55), subsequently amended (# 56) was timely filed. This Court has jurisdiction pursuant to 28 U.S.C. § 158 and Bankruptcy Rule 8001. The briefs of Appellant and Respondent (## 78 and 80, respectively) as well as Appellant's Reply Brief (# 81) have been received and considered. For the reasons discussed herein, the Bankruptcy Court's final order is affirmed.

## FACTUAL BACKGROUND

The Bankruptcy Court made findings of fact, which are adopted by this Court and incorporated herein by reference. *See* # 47. Early in 1986, Hughes and Slonim agreed that Slonim would open a jewelry store in the Sands Hotel and Casino, then owned by Hughes. Negotiations as to the terms of a long-term lease extended for the better part of the year, and in June 1986, Hughes' representatives and Slonim reached tentative agreement on a written draft of a six-month lease with two five-year options (the "Unsigned Lease"). The Unsigned Lease was then transmitted to Hughes' corporate offices for review. Hughes' representatives informed Slonim that Hughes' standard procedure required that the Unsigned Lease be formally reviewed prior to execution. Slonim asserts that she was assured that this requirement was merely a formality.

By September 1986, Rose Jewelry was incorporated to operate the store, Slonim had acquired inventory, and relocated her daughter from New York to manage the store. In late September 1986, Rose Jewelry required documentation of its leased premises, but the Unsigned Lease had not yet been formally approved by Hughes. As an interim measure, the parties executed the Monthly Lease, a month-to-month tenancy, on October 3, 1986. Commencing in October 1986, Rose Jewelry paid rent to Hughes pursuant to the terms of the Monthly Lease.

In April 1987, Hughes refused to execute the Unsigned Lease, attempted to reopen negotiations by tendering a counter proposed long-term lease. Slonim insisted that Hughes execute the Unsigned Lease, and the negotiations ended. In September 1987, Hughes announced the sale of the Sands Hotel, and delivered an estoppel certificate to Slonim which stated that the Monthly Lease constituted the only enforceable lease between Hughes and Rose Jewelry.

Consequently, Hughes delivered a thirty-day notice of termination pursuant to the Monthly Lease, effective November 30, 1987. In response, Slonim filed an action in state court seeking enforcement of the Unsigned Lease, and obtained a temporary restraining order enjoining the termination of the Monthly Lease on behalf of Rose Jewelry. The state court action was removed to this Court following Slonim's filing of a petition for relief in bankruptcy under Chapter 11.

## STANDARD OF REVIEW

Slonim's counsel accurately describes the standard of review which this Court must utilize:

> In reviewing questions of fact, the bankruptcy court's findings may be set aside only when clearly erroneous. Bankruptcy Rule 8013; *In re American Marine Industries Inc.*, 734 F.2d 426 (9th Cir. 1984). Issues of law are reviewed *de novo. Rubenstein v. Ball Bros. Inc.*, 749 F.2d 1277 (9th Cir.1984).

#78 at 4.

Hughes' counsel provides further assistance by quoting from the Supreme Court's discussion of appellate review under the "clearly erroneous" standard in *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985):

> This [clearly erroneous] standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.... If the [lower] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

## BANKRUPTCY COURT'S FINDINGS OF FACT NOT CLEARLY ERRONEOUS; CONCLUSIONS OF LAW ARE SOUND

Slonim argued before the Bankruptcy Court that Hughes' representatives assured her that the formal approval of Hughes corporate offices was merely a formality. Under these circumstances, Slonim asserts that she reasonably relied on the assumption that Rose Jewelry enjoyed the security of a long-term lease, notwithstanding Hughes' refusal to execute the Unsigned Lease. Accordingly, Slonim maintains that Hughes is estopped to deny that the Unsigned Lease constitutes an enforceable agreement between the parties.

Slonim does not contest the fact that the Unsigned Lease was never executed by Hughes. Since the term of the Unsigned Lease was for a period of time in excess of one year, the Unsigned Lease falls within the statute of frauds.[1] Nevertheless, contracts otherwise unenforceable because of the statute of frauds may be enforced under the doctrine of estoppel. *Zunino v. Paramore*, 83 Nev. 506, 435 P.2d 196 (1967);[2] *Alpark Distributing, Inc. v. Poole*, 95 Nev. 605, 600 P.2d 229 (1979).[3]

After considering the evidence before it, the Bankruptcy Court found that Slonim was a knowledgeable businesswoman who knew that any lease would have to be reviewed and approved by Hughes' corporate offices before it could be legally binding. #47, Finding of Fact Nos. 9, 10. Accordingly, the Bankruptcy Court found that any detrimental reliance by Slonim on the assumption that the Unsigned Lease was legally binding had been unreasonable since it was undertaken prior to the execution. *Id.*, Finding of Fact No. 14.

The Bankruptcy Court found that the Monthly Lease was intended as a temporary or interim agreement, and was not

---

1. NRS 111.205, 111.210, 111.220.

2. In this regard, the Nevada Supreme Court has stated: To constitute estoppel, the party relying on it must be influenced by the acts or silence of the other and it must appear that the acts or conduct of the party estopped caused the party relying to act as he would not have acted or he cannot complain that he was deceived to his prejudice. Estoppel or part performance must be proved by some extraordinary measure or quantum of evidence. *Zunino v. Paramore*, 83 Nev. 506, 435 P.2d 196, 197 (1967) (Citations omitted).

3. In *Alpark,* the Nevada Supreme Court quoted Justice Roger J. Traynor of the California Supreme Court in its determination that the doctrine of estoppel is properly invoked whenever "unconscionable injury ... would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract ..." 600 P.2d at 230, citing *Monarco v. Lo Greco,* 35 Cal.2d 621, 220 P.2d 737, 739 (1950).

intended to be a final written agreement integrating all understandings between the parties. *Id.*, Finding of Fact No. 6. It is also clear that while the parties seriously negotiated the terms of the Unsigned Lease, it was never executed by Hughes. *Id.*, Finding of Fact No. 11.

The Bankruptcy Court also found that Slonim would not have entered into the Monthly Lease on behalf of Rose Jewelry "had she thought Hughes was not in a position to give her a long-term lease." *Id.*, Finding of Fact No. 17. This does not, however, militate against the Bankruptcy Court's finding that Slonim placed no reliance upon any agreement other than the Monthly Lease, and suffered no reasonable detrimental reliance in establishing Rose Jewelry. Hughes does not deny that it seriously negotiating several drafts of a long-term lease, nor that its corporate offices reviewed the Unsigned Lease as the penultimate step in the approval process.

Moreover, the uncontested fact remains that the Unsigned Lease was never executed, and the parties continued their business relationship in reliance upon the Monthly Lease as a binding, albeit interim legal arrangement.[4]

This Court has reviewed the record on appeal, and must conclude that the Bankruptcy Court's findings of fact are not clearly erroneous, and that its conclusions of law are sound. The Bankruptcy Court found that Slonim had not relied on any agreement other than the Monthly Lease, and that Rose Jewelry's conduct was consistent with the Monthly Lease. *Id.*, Finding of Fact Nos. 12, 13. Hence, this Court concludes as a matter of law, that under the circumstances of this action, the doctrine of estoppel is inapplicable. As a re-

sult Appellant's appeal, as amended (# 56) must be rejected, and the Judgment of the Bankruptcy Court AFFIRMED.

IT IS SO ORDERED.

---

**4.** Hughes' counsel maintains that "the parol evidence rules constitutes an additional and sufficient basis to affirm the Bankruptcy Court's decision." # 80 at 21–25. Hughes' counsel is completely off the mark. The parol evidence rule applies to preclude evidence of antecedent understandings to vary or contradict the writing only when the parties to a written contract have expressed the writing as the *complete and accurate integration* of the contract. 3 A.L. Corbin, Corbin on Contracts § 573 (1960); *accord Aladdin Hotel Corp. v. General Drapery Servs., Inc.,*

611 P.2d 1084 (1980); *Alexander v. Simmons,* 90 Nev. 23, 518 P.2d 160 (1974).

The Bankruptcy Court found that the Monthly Lease was intended as a temporary or interim agreement, and was not intended to be a final written agreement integrating all understandings between the parties. # 47, Finding of Fact No. 6. In addition, the Bankruptcy Court made "no finding on the subject of whether or not the parties reached an oral agreement inconsistent with the [Monthly Lease]." *Id.*, Finding of Fact No. 7.