On April 12, 2018, the Court heard oral argument on the application for leave to appeal the February 9, 2017 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.
 

 McCormack, J. (concurring).
 

 The equitable principle of estoppel is many centuries old. Under the doctrine, a promise that the promisor should reasonably expect to produce action or inaction from its recipient may be binding if justice so requires. See Restatement Contracts, 2d, § 90. Its age highlights its staying power. Over the years, it has been widely adopted, easily applied, and narrowly tailored. I agree with the Court that we should decline an invitation to disassemble it today.
 

 The English Parliament adopted the first statute of frauds in 1677. Note,
 
 Statute of Frauds-The Doctrine of Equitable Estoppel and the Statute of Frauds
 
 ,
 
 66 Mich. L. Rev. 170
 
 , 170 (1967). The enactment of the statute was largely driven by concerns unique to the seventeenth century. As Sir William Holdsworth explains, at that time, tangible evidence of agreement was necessitated by the virtually unfettered discretion given to juries. 6 Holdsworth, A History of English Law (1924), p. 388. Nothing prevented juries from receiving independent information on cases, and motions for a directed verdict were relatively new and untested at the time.
 
 Id
 
 . Additionally, the witness testimony that juries could hear was tightly restricted, as neither the parties to an action nor any parties interested in the outcome of the action were considered competent witnesses.
 
 Id
 
 . Within this framework, the statute of frauds played the important role of ensuring that juries were not provided false information regarding contracts that had never been formed.
 
 [1]
 

 From the very beginning of British jurisprudence relating to the statute of frauds, British courts have applied equitable rules to enforce promises that induced a party to act in reliance. Costigan, Jr.,
 
 The Date and Authorship of the Statute of Frauds
 
 ,
 
 26 Harv. L. Rev. 329
 
 , 343 (1913). The British Court of Chancery would regularly apply these equitable rules, particularly equitable estoppel and specific performance, "if insistence on the letter of the statute would facilitate a fraud." 6 Holdsworth, p. 393. From its inception, then, there was agreement that exceptions to the statute of frauds were needed in order to prevent the statute itself from perpetuating frauds. The trend crossed the pond. Today, promissory estoppel is employed in every variety of United States court. See
 
 Comment Note.-Promissory estoppel
 
 ,
 
 48 A.L.R. 2d. 1069
 
 (1956).
 

 Michigan is no outlier. Our Legislature passed the first statute of frauds in 1838, just after statehood, 1838 RS, pt. 2, tit. vi, ch. 1, and before that, a statute of frauds could be found in Michigan's territorial
 laws, 1 Territorial Laws, Act of December 7, 1819, § 10, p. 467. And this Court has applied the doctrine of equitable estoppel for nearly a century to prevent the statute from becoming "an instrument of fraud."
 
 Lyle v. Munson
 
 ,
 
 213 Mich. 250
 
 , 260,
 
 181 N.W. 1002
 
 (1921) ; see also
 
 Jones v. Pashby
 
 ,
 
 67 Mich. 459
 
 , 462,
 
 35 N.W. 152
 
 (1887) ("[A] parol agreement under such circumstances would act as an estoppel, if acquiesced in for years, and the statute of frauds would not intervene to prevent the enforcement of such estoppel."). We have reaffirmed that principle time and time again.
 
 Brummel v. Brummel
 
 ,
 
 363 Mich. 447
 
 , 452,
 
 109 N.W.2d 782
 
 (1961) (citing cases). So too has the Legislature. Since 1921, the Legislature has amended the statute of frauds three times and never repudiated the statute's estoppel-based exceptions.
 
 1945 PA 261
 
 ;
 
 1974 PA 343
 
 ;
 
 1992 PA 245
 
 .
 
 [2]
 
 When the Legislature reenacts a statute, we presume it did so with an understanding of the court's interpretation of it. See
 
 Anzaldua v. Band
 
 ,
 
 457 Mich. 530
 
 , 544,
 
 578 N.W.2d 306
 
 (1998), citing
 
 Lorillard v. Pons
 
 ,
 
 434 U.S. 575
 
 , 581,
 
 98 S.Ct. 866
 
 ,
 
 55 L.Ed.2d 40
 
 (1978). The doctrine has withstood the tests of time, and legislative and judicial scrutiny.
 

 More recently, this Court affirmed promissory estoppel in
 
 Opdyke Investment Co. v. Norris Grain Co.
 
 ,
 
 413 Mich. 354
 
 ,
 
 320 N.W.2d 836
 
 (1982). There we declined to adopt "narrow and rigid rules for compliance with the statute of frauds."
 
 Id
 
 . at 367,
 
 320 N.W.2d 836
 
 . Instead, we unanimously held that "recovery based on a noncontractual promise falls outside the scope of the statute of frauds" and that the plaintiff's claim of promissory estoppel required the denial of the defendant's summary disposition motion.
 
 Id
 
 . at 370,
 
 320 N.W.2d 836
 
 . This conclusion was necessary to "avoid the arbitrary and unjust results required by an overly mechanistic application of the rule."
 
 Id
 
 . at 365,
 
 320 N.W.2d 836
 
 .
 
 [3]
 

 We have considerable company. Three-fifths of the states apply promissory estoppel in some fashion despite the statute of frauds.
 
 [4]
 
 And only a handful of states have
 explicitly forbidden the use of promissory estoppel as an exception to the statute of frauds. The dissent's canvass of the several states makes the case that abandoning promissory estoppel remains a distinctly minority position.
 

 And even the cases the dissent cites do not uniformly support its position. The dissent cites
 
 Tiffany Inc. v. WMK Transit Mix, Inc.
 
 ,
 
 16 Ariz. App. 415
 
 , 421,
 
 493 P.2d 1220
 
 (1972), for the proposition that promissory estoppel would nullify the statute of frauds.
 
 Tiffany
 
 is an intermediate court decision from Arizona, but the Arizona Supreme Court has held promissory estoppel may be applied to defeat the statute of frauds where "there is a second promise not to rely on the statute."
 
 Mullins v. Southern Pacific Transp. Co.
 
 ,
 
 174 Ariz. 540
 
 , 542,
 
 851 P.2d 839
 
 (1992). The cases the dissent cites from Maine and Washington are also unhelpful:
 
 Stearns v. Emery-Waterhouse Co.
 
 ,
 
 596 A.2d 72
 
 (Me., 1991) and
 
 Greaves v. Med. Imaging Sys., Inc.
 
 ,
 
 124 Wash. 2d 389
 
 ,
 
 879 P.2d 276
 
 (1994). Although each case is evidence that promissory estoppel is not an immutable exception to the statute of frauds in those jurisdictions, neither has done away with the doctrine altogether (as the dissent would have us do here).
 
 Harvey v. Dow
 
 ,
 
 962 A.2d 322
 
 , 327 (Me., 2008) (applying promissory to an agreement to transfer land);
 
 Klinke v. Famous Recipe Fried Chicken, Inc.
 
 ,
 
 94 Wash. 2d 255
 
 , 260,
 
 616 P.2d 644
 
 (1980) (applying promissory estoppel to restaurant franchise agreement). If there is any wisdom to be found in majorities, we should not rush to abandon promissory estoppel.
 

 And then there's stare decisis.
 
 [5]
 
 We don't overrule precedent lightly. Our test for determining whether to overrule
 
 Opdyke
 
 has us consider these factors: (1) "whether the earlier decision was wrongly decided," (2) "whether the decision at issue defies practical workability," (3) "whether reliance interests would work an undue hardship," and (4) "whether changes in the law or facts no longer justify the questioned decision."
 
 Robinson v. Detroit
 
 ,
 
 462 Mich. 439
 
 , 464,
 
 613 N.W.2d 307
 
 (2000) (cleaned up).
 

 As the brief tour of the statute's history, our relevant jurisprudence and that of our sister states demonstrates,
 
 Opdyke
 
 was correctly decided. Confronted with this same problem over the years and across jurisdictions, courts have repeatedly permitted parties to rely on promissory estoppel to enforce noncontractual promises in
 the right circumstances. This is unsurprising, as the doctrine exemplifies practical workability by setting out a straightforward legal rule for courts to follow. The Court of Appeals opinion in this case proves the point: for all its grousing about the result, the panel had no trouble reaching it.
 
 [6]
 

 To overrule
 
 Opdyke
 
 and reject equitable exceptions to the statute of frauds would contravene core principles of stare decisis. Stability in the law is usually preferred, as it prevents arbitrary discretion by courts.
 
 McCormick v. Carrier
 
 ,
 
 487 Mich. 180
 
 , 210,
 
 795 N.W.2d 517
 
 (2010). Considerations in favor of stability are strongest in "cases involving property and contract rights, where reliance interests are involved ...."
 
 Payne v. Tennessee
 
 ,
 
 501 U.S. 808
 
 , 828,
 
 111 S.Ct. 2597
 
 ,
 
 115 L.Ed.2d 720
 
 (1991). And overruling a 35-year-old unanimous opinion would be especially noteworthy. See Garner et al.,
 
 The Law of Judicial Precedent
 
 (St. Paul: Thomson/West, 2016), p. 182 ("When everyone sitting on a case agrees on the outcome of an issue or case, the panel speaks with one voice. The decision carries the full weight of the panel's authority. ... Other things being equal, courts will usually consider a precedent that speaks for a unanimous court as more authoritative than one that speaks for a split panel.").
 

 But there's more. To abandon all equitable exceptions to the statute of frauds, as the dissent advocates, implicates not only
 
 Opdyke
 
 , but also more than a century of our Court's precedent (not to mention centuries of English common law before that). While the dissent believes that this result is warranted by the plain language of the text and by principles of judicial restraint, in fact overruling, in one fell swoop, centuries of well-settled precedent tilts in the other direction. "[T]he longer a rule has continued, the more thoroughly has it inevitably become interwoven with the business and property interests of the community at large; and, therefore, the more disastrous must be a change, especially a sudden change." Wells, A Treatise on the Doctrines of Res Judicata and Stare Decisis (1878), pp. 544-545. The dissent has this characterization backwards; the majority's decision today is compelled by principles of stability and judicial modesty.
 
 [7]
 

 The rule has not, moreover, declared open season on contracts. As an equitable doctrine, courts retain the discretion to strictly enforce the statute of frauds. Countless decisions have done just that. E.g.
 
 Hazime v. Martin Oil Co. of Ind.
 
 ,
 
 792 F.Supp. 1067
 
 (ED Mich., 1992) ;
 
 Marrero v. McDonnell Douglas Capital Corp.
 
 ,
 
 200 Mich. App. 438
 
 , 441-443,
 
 505 N.W.2d 275
 
 (1993) ;
 
 Lovely v. Dierkes
 
 ,
 
 132 Mich. App. 485
 
 , 489-490,
 
 347 N.W.2d 752
 
 (1984). We have also limited the doctrine-such as requiring the promise to be "clear and definite"-to ensure it is not abused.
 
 State Bank of Standish v. Curry
 
 ,
 
 442 Mich. 76
 
 , 85,
 
 500 N.W.2d 104
 
 (1993). Contrary to the claims of the dissent, the reliance interests cut squarely in favor of maintaining our precedents. Citizens, businesses, and lawyers naturally will rely on any doctrine that has endured a century or more, particularly after it was clarified by
 
 Opdyke
 
 .
 
 [8]
 
 And that is especially true where the Legislature has never amended the statute of frauds to eliminate the exception.
 

 While it may be correct that very few people have ever entered an agreement with the expectation of having it violated and later judicially enforced by promissory estoppel, this view misses the point. Very few people have ever driven a car with the expectation of triggering their airbags, but the presence of the safety device allows them peace of mind and mitigates injuries from the unexpected crash. Just so, promissory estoppel allows parties to trust each other in matters where trust is essential and permits limited recovery where a party has acted in bad faith. See
 
 Curry
 
 ,
 
 442 Mich. at 83-84
 
 ,
 
 500 N.W.2d 104
 
 . And, finally, the dissent makes no claim that any changes in the law justify overturning
 
 Opdyke
 
 . But this is not surprising because there have been no relevant changes to the law since
 
 Opdyke
 
 was decided, which underscores the ongoing vitality of the decision.
 

 There are times when courts must overturn precedent. But, in my view, those occasions should be rare and the case for doing so compelling. This is plainly not one of those cases.
 

 Even if doctrine had grown stale, this case would be a poor vehicle to upend it. I largely agree with the dissent's view of the facts, but one key point is missing: the defendant chose not to produce any evidence to support its position regarding summary disposition. Instead of giving the trial court facts from which it could have determined that the plaintiff's claim of promissory estoppel was not supported, it decided instead to ask the court to hold the doctrine inapplicable, an impossible request of any court but this one.
 

 This strategic decision should have prevented the trial court from granting the defendant's motion for summary disposition under MCR 2.116(C)(8). In ruling on the motion, the trial court must accept all well-pled factual allegations as true in the light most favorable to the nonmoving party, and it may only grant the motion if the claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.
 

 Maiden v. Rozwood
 
 ,
 
 461 Mich. 109
 
 , 119,
 
 597 N.W.2d 817
 
 (1999). At this stage, the court may only consider the pleadings.
 
 Id
 
 . at 119-120,
 
 597 N.W.2d 817
 
 . The "existence and scope of the promise are questions of fact ...."
 
 Curry
 
 ,
 
 442 Mich. at 84
 
 ,
 
 500 N.W.2d 104
 
 . The question for the trial court was, "Was there sufficient evidence, which, if believed by the trier of fact, would support a finding of estoppel sufficient to circumvent the statute of frauds?"
 
 Conel Dev., Inc. v. River Rouge Savings Bank
 
 ,
 
 84 Mich. App. 415
 
 , 423,
 
 269 N.W.2d 621
 
 (1978).
 

 The plaintiffs claim that the defendant promised them they would be paid a broker's commission for their role in matching the defendant with a buyer. They submitted a photo of the defendant's sign that read "Brokers Protected" and alleged that this text is understood in their industry as a promise to pay a brokerage fee. The defendant made no counter allegations and submitted nothing to rebut the plaintiffs' claims. Perhaps if the defendant had submitted evidence in support of summary disposition, the trial could have properly concluded that there was no "clear and definite" promise, and thus, promissory estoppel was inapposite. But because it did not, the trial court was obligated to follow
 
 Opdyke
 
 and was not in a position to make the new rule of law the dissent would want this Court to make. And the Court of Appeals was correct to reverse the trial court's grant of the defendant's motion on this record.
 

 What's more, the procedural history of this case makes it a poor candidate to announce a watershed ruling. It is interlocutory, and discovery has not taken place, so there is still room for factual development. If we were to make the robust doctrinal move the dissent would have us make, this would be a startling case in which to do so.
 

 For all these reasons, the Court is correct to deny leave on this case.
 

 Viviano, J., joins the statement of McCormack, J.
 

 As rules of evidence developed to address many of the concerns that gave rise to the statute of frauds, the statute came under criticism as unnecessary or dangerous. See Epstein, Starbird & Vincent,
 
 Reliance on Oral Promises: Statute of Frauds and Promissory Estoppel
 
 ,
 
 42 Tex. Tech. L. Rev. 913
 
 , 928 (2010) ("[The Statute of Frauds] remained the law in England until 1954 when most of its provisions were repealed so that it applies only to land contracts and guarantees. According to Professor John Krahmer of Texas Tech University School of Law, England abolished the statute of frauds 'for being superfluous and irrelevant.' While the statute of frauds has been virtually eliminated from the law of contracts in England, it remains an important (albeit long unpopular) part of the law of contracts in the United States."); Summers,
 
 The Doctrine of Estoppel Applied to the Statute of Frauds
 
 , 79 U. Penn. L. Rev. 440, 442 (1931) (" 'The special peculiarity of ... the Statute of Frauds is that it is in the nature of things impossible that it ever should have any operation, except that of enabling a man to escape from the discussion of the question whether he has or has not been guilty of a deliberate fraud by breaking his word.' "), quoting Pollock & Stephens,
 
 Section Seventeen of the Statute of Frauds
 
 , 1 L. Q. Rev. 1 (1885).
 

 The 1992 revision added a section that the Court of Appeals has interpreted to prevent promissory estoppel from applying to suits against financial institutions. See
 
 Crown Tech. Park v. D&N Bank, FSB
 
 ,
 
 242 Mich. App. 538
 
 , 550,
 
 619 N.W.2d 66
 
 (2000).
 

 And the Chief Justice has recognized another equitable doctrine, partial performance, as creating an exception to the statute of frauds.
 
 Vittiglio v. Vittiglio
 
 ,
 
 493 Mich. 936
 
 , 936-937,
 
 825 N.W.2d 584
 
 (2013) ( Markman , J., concurring) ("[I]t is ultimately correct that plaintiff is bound by the settlement ... [because] defendant gave plaintiff a check for $1.2 million in reliance on the settlement agreement, which was sufficient partial performance to take the oral settlement out of the statute of frauds and render it enforceable.").
 

 Kiernan v. Creech
 
 ,
 
 268 P.3d 312
 
 , 316 (Alaska 2012) ;
 
 Mullins v. Southern Pacific Transp. Co.
 
 ,
 
 174 Ariz. 540
 
 , 542,
 
 851 P.2d 839
 
 (1992) ;
 
 Ralston Purina Co. v. McCollum
 
 ,
 
 271 Ark. 840
 
 , 844,
 
 611 S.W.2d 201
 
 (1981) ;
 
 Garcia v. World Savings, FSB
 
 ,
 
 183 Cal. App. 4th 1031
 
 , 1040 n. 10,
 
 107 Cal.Rptr.3d 683
 
 (2010) ;
 
 Kiely v. St. Germain
 
 ,
 
 670 P.2d 764
 
 , 769 (Colo., 1983) ;
 
 Taylor v. Jones
 
 , unpublished memorandum opinion of the Delaware Court of Chancery, issued December 17, 2002 (Case No. 1498-K),
 
 2002 WL 31926612
 
 ;
 
 Tauber v. Dist. of Columbia
 
 ,
 
 511 A.2d 23
 
 , 27 (DC App., 1986) ;
 
 20/20 Vision Ctr., Inc. v. Hudgens
 
 ,
 
 256 Ga. 129
 
 , 135,
 
 345 S.E.2d 330
 
 (1986) ;
 
 McIntosh v. Murphy
 
 ,
 
 52 Haw. 29
 
 , 35,
 
 469 P.2d 177
 
 (1970) ;
 
 Brown v. Branch
 
 ,
 
 758 N.E.2d 48
 
 , 52 (Ind., 2001) ;
 
 Kolkman v. Roth
 
 ,
 
 656 N.W.2d 148
 
 , 153 (Iowa, 2003) ;
 
 Bittel v. Farm Credit Servs. of Central Kansas
 
 ,
 
 265 Kan. 651
 
 , 659,
 
 962 P.2d 491
 
 (1998) ;
 
 Snyder v. Snyder
 
 ,
 
 79 Md. App. 448
 
 ,
 
 558 A.2d 412
 
 (1989) ;
 
 Barrie-Chivian v. Lepler
 
 ,
 
 87 Mass. App. Ct. 683
 
 , 685,
 
 34 N.E.3d 769
 
 (2015) ;
 
 Del Hayes & Sons, Inc. v. Mitchell
 
 ,
 
 304 Minn. 275
 
 , 285,
 
 230 N.W.2d 588
 
 (1975) ;
 
 Alpark Distrib., Inc. v. Poole
 
 ,
 
 95 Nev. 605
 
 , 608,
 
 600 P.2d 229
 
 (1979) ;
 
 Eavenson v. Lewis Means, Inc.
 
 ,
 
 105 N.M. 161
 
 ,
 
 730 P.2d 464
 
 (1986), overruled on other grounds by
 
 Strata Prod. Co. v. Mercury Exploration Co.
 
 ,
 
 121 N.M. 622
 
 , 627-628,
 
 916 P.2d 822
 
 (1996) ;
 
 In re Hennel Estate
 
 ,
 
 29 N.Y.3d 487
 
 , 494,
 
 80 N.E.3d 1017
 
 (2017) ;
 
 Home Elec. Co. of Lenoir,Inc. v. Hall & Underdown Heating & Air Conditioning Co.
 
 ,
 
 86 NC App. 540
 
 , 543,
 
 358 S.E.2d 539
 
 (1987), aff'd
 
 322 NC 107
 
 ,
 
 366 S.E.2d 441
 
 (1988) ;
 
 Knorr v. Norberg
 
 ,
 
 872 N.W.2d 323
 
 , 326 (ND, 2015) ;
 
 Olympic Holding Co., LLC v. ACE Ltd.
 
 ,
 
 122 Ohio St. 3d 89
 
 , 96,
 
 909 N.E.2d 93
 
 (2009) ;
 
 Lacy v. Wozencraft
 
 ,
 
 188 Okla. 19
 
 ,
 
 105 P.2d 781
 
 (1940) ;
 
 Potter v. Hatter Farms, Inc.
 
 ,
 
 56 Or. App. 254
 
 , 262,
 
 641 P.2d 628
 
 (1982) ;
 
 Brochu v. Santis
 
 ,
 
 939 A.2d 449
 
 , 453 (RI, 2008) ;
 
 Durkee v. Van Well
 
 ,
 
 654 N.W.2d 807
 
 , 815 (SD, 2002), overruled in part on other grounds by
 
 Mundhenke v. Holm
 
 ,
 
 787 N.W.2d 302
 
 , 306-307 (2010) ;
 
 Shedd v. Gaylord Entertainment Co.
 
 ,
 
 118 S.W.3d 695
 
 , 699-700 (Tenn. App., 2003) ;
 
 "Moore" Burger, Inc. v. Phillips Petroleum Co.
 
 ,
 
 492 S.W.2d 934
 
 , 937-938 (1972) ;
 
 Stangl v. Ernst Home Ctr., Inc.
 
 ,
 
 948 P.2d 356
 
 , 365-366 (Utah App., 1997) ;
 
 T... v. T...
 
 ,
 
 216 Va. 867
 
 , 873,
 
 224 S.E.2d 148
 
 (1976) ;
 
 Hoover v. Moran
 
 ,
 
 222 W. Va. 112
 
 , 119,
 
 662 S.E.2d 711
 
 (2008) ;
 
 Klinke v. Famous Recipe Fried Chicken, Inc.
 
 ,
 
 94 Wash. 2d 255
 
 , 259-260,
 
 616 P.2d 644
 
 (1980) ;
 
 McLellan v. Charly
 
 ,
 
 313 Wis. 2d 623
 
 , 653,
 
 758 N.W.2d 94
 
 (2008) ;
 
 B & W Glass, Inc. v. Weather Shield Mfg., Inc.
 
 ,
 
 829 P.2d 809
 
 , 816-817 (Wy., 1992).
 

 "Stare decisis," the Latin phrase that means "to stand by the decided matters," is, of course, our shorthand for the principle that guides our branch of government: that we should respect our earlier decisions.
 

 Writing in support of the defendants, Michigan Realtors argues that
 
 Opdyke
 
 undermines good business practices, and the dissent is persuaded that this should feature in our consideration. We are in no position to gainsay these policy arguments, but they are more properly directed towards the Capitol Building, not the Hall of Justice. The Legislature has amended the Statute of Frauds to clarify the application of promissory estoppel for certain industries. See
 
 Crown Technology Park v. D&N Bank
 
 ,
 
 242 Mich. App. 538
 
 , 549,
 
 619 N.W.2d 66
 
 (2000) (interpreting MCL 566.132(2) ). It can do so for this industry if it chooses to.
 

 If it is a retreat from textualism, as the dissent asserts, to recognize that in certain instances-this case being an obvious example-the doctrine of stare decisis operates as a pragmatic exception to dogmatic textualism, at least I have the comfort of knowing that I am in good company. See Scalia,
 
 A Matter of Interpretation: Federal Courts and the Law
 
 , pp. 138-139 (Princeton: Princeton University Press, 1997) ("Originalism, like any other theory of interpretation put into practice in an ongoing system of law, must accommodate the doctrine of
 
 stare decisis
 
 ; it cannot remake the world anew. It is of no more consequence at this point whether the Alien and Sedition Acts of 1798 were in accord with the original understanding of the First Amendment than it is whether
 
 Marbury v. Madison
 
 was decided correctly."); Scalia & Garner,
 
 Reading Law: The Interpretation of Legal Texts
 
 (St. Paul: Thomson/West, 2012), pp. 413-414 (asserting that "[s]tare decisis ... is not a part of textualism. It is an exception to textualism ... born not of logic but of necessity. Courts cannot consider anew every previously decided question that comes before them. Stare decisis has been a part of our law from time immemorial, and we must bow to it. All we categorically propose here is that, when a governing precedent deserving of stare decisis effect does not dictate a contrary disposition, judges ought to use proper methods of textual interpretation. If they will do that, then over time the law will be more certain, and the rule of law more secure.").
 

 Promissory estoppel has also gained widespread acceptance in learned treatises. E.g., Restatement Contracts, 2d, § 90 ; 4 Williston, Contracts (4th ed.), § 8:4; 4 Am. Jur. 2d, Proof of Facts, § 641; 3 Williston & Jaeger, A Treatise on the Law of Contracts (3d ed.), § 533A.