**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SCOTT CHRISTOPHER ZAJAC and<br>ERICA NICHOLE ZAJAC,<br>　　　　　Debtors. | BAP No.　NV-21-1090-FGT<br><br>Bk. No.　18-13417-GS<br><br>Adv. No.　18-01080-GS |
| RANDY HUTTON; DIANE HUTTON,<br>　　　　　Appellants,<br>v.<br>SCOTT CHRISTOPHER ZAJAC; ERICA<br>NICHOLE ZAJAC,<br>　　　　　Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Gary A. Spraker, Bankruptcy Judge, Presiding

Before: FARIS, GAN, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Appellant Randy Hutton and Diane Hutton alleged that a judgment

debt that chapter 7[1] debtors Scott Christopher Zajac and Erica Nichole

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Zajac owed them was nondischargeable under § 523(a)(2)(A). After a trial, the bankruptcy court held that the Huttons failed to carry their burden of proof.

The Huttons appeal. We discern no error and AFFIRM.

## FACTS[2]

Mrs. Zajac operated a competitive cheerleading and tumbling business known as "Frontline." Mrs. Zajac was a friend of the Huttons' daughter, Laura, who introduced Mrs. Zajac to her parents for the purpose of soliciting a loan.

Pacific Systems and Technology, the Huttons' software development company, agreed to loan the Zajacs $20,000. The Zajacs personally signed a promissory note payable to Pacific Systems, and Mr. Hutton signed the note as "lender" for Pacific Systems.

The Huttons contend that they made the loan based on the Zajacs' representations that Frontline was incorporated and profitable, that it had a contract with the Clark County School District to provide classes and training to students, and that they would use the loan proceeds to purchase equipment to further the agreement with the school district. They also claim that the Zajacs requested that Pacific Systems develop billing software required by the school district in exchange for ten percent of the

_____

[2] We exercise our discretion to review the bankruptcy court's docket in this case, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

revenue from the agreement with the school district. They claim that some of these representations are reflected in Appendix A that was referenced in and attached to the note.

The Zajacs deny making any of these representations, and they deny that Appendix A was attached to the note when they signed it.

The Zajacs used the loan proceeds for general expenses and certain specialized equipment requested by Laura's boyfriend for mixed martial arts training.

The Zajacs defaulted on the loan, and the Huttons sued them in state court and recovered a default judgment for $20,623.04.

The Zajacs thereafter filed a chapter 7 petition. The Huttons responded with an adversary proceeding objecting to discharge under § 727 and seeking to have the judgment debt declared nondischargeable under §§ 523(a)(2)(A) and (a)(4). The bankruptcy court dismissed all claims other than the § 523(a)(2)(A) claim. The Huttons do not challenge the dismissal of those claims on appeal.

The Huttons' amended complaint alleged that the Zajacs made false statements about the purpose of the loan, their intended use of the proceeds, the existence of the agreement with the school district, the status of an LLC through which the Zajacs conducted Frontline's business, and the need for Pacific Systems to develop billing software.

After a trial, the bankruptcy court issued its memorandum decision. In summary, it found that the radically different versions of events offered

by the parties were equally likely to be true. Therefore, it held that the Huttons failed to carry their burden to prove by a preponderance of the evidence that the debt was fraudulently obtained.

The bankruptcy court distilled the Huttons' allegations of false statements and misrepresentations into five categories. First, the court held that any misrepresentation about Frontline's profitability concerned the debtors' financial condition, which is actionable only under § 523(a)(2)(B) and must be in writing.

Second, the court held that the Huttons failed to prove that the Zajacs knew that Frontline's LLC status had been revoked or that they misrepresented its status with an intent to deceive. The court also held that the Huttons failed to prove that they justifiably relied on representations concerning Frontline's status because they made the loans to the Zajacs personally.

Third, the bankruptcy court held that the Huttons failed to establish by a preponderance of the evidence that the Zajacs falsely represented that Frontline had an existing contractual relationship with the school district.

Fourth, the bankruptcy court held that the Huttons failed to prove that the Zajacs misrepresented the intended use of the loan proceeds.

Finally, the court stated that, apart from the nondischargeability claim, the Huttons asserted damages from the breach of an agreement to develop the billing software. It stated that the only evidence of an agreement was Appendix A to the promissory note, which the Zajacs claim

4

they had never seen. The court found no evidence that the Huttons provided Appendix A to the Zajacs or that the parties negotiated an agreement. In the alternative, the court held that the Huttons had failed to prove any injury.

The bankruptcy court entered judgment in favor of the Zajacs. The Huttons belatedly filed their notice of appeal from the judgment, but the bankruptcy court deemed it timely due to excusable neglect.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in determining after trial that the Huttons failed to establish the elements of their § 523(a)(2)(A) claim by a preponderance of the evidence.

## STANDARDS OF REVIEW

In appeals from judgments under § 523(a), we review the bankruptcy court's findings under the clearly erroneous standard and its legal conclusions de novo. *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 28 (9th Cir. BAP 2009), *aff'd*, 407 F. App'x 176 (2010). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

Findings of fact are clearly erroneous only if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*,

606 F.3d 1189, 1196 (9th Cir. 2010). We give particular deference to the bankruptcy court's credibility findings. *Id.* If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

We review for an abuse of discretion the bankruptcy court's evidentiary rulings. *Int'l Ass'n of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo)*, 408 B.R. 280, 292 (9th Cir. BAP 2009). "To reverse on the basis of an erroneous evidentiary ruling, we must conclude not only that the bankruptcy court abused its discretion, but also that the error was prejudicial." *Id.* (citation omitted). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or its factual findings are illogical, implausible, or without support from evidence in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

Section 523(a)(2)(A) excepts from discharge a debt resulting from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The Ninth Circuit has identified the five elements for a § 523(a)(2)(A) claim:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of [the debtor's] statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor

proximately caused by its reliance on the debtor's statement or conduct.

*Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000); *see In re Weinberg*, 410 B.R. at 35.

Whether the debtor made a false statement and whether the debtor intended to deceive are factual questions. *Candland v. Ins. Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1469 (9th Cir. 1996), *as amended* (Oct. 2, 1996); *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1018 (9th Cir. 1997), *as amended* (Mar. 21, 1997).

The creditor bears the burden of proving § 523(a)(2)(A)'s applicability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).

The bankruptcy court properly articulated both the legal standard and evidentiary standard for a nondischargeability claim under § 523(a)(2)(A). It identified the allegedly fraudulent statements, considered the evidence, and ultimately found that the evidence was in equipoise, so the Huttons failed to establish each element of their claim by a preponderance of the evidence. These findings were not clearly erroneous.

The parol evidence rule did not bar the Zajacs' testimony that Appendix A was never a part of the promissory note and that they were not aware of and did not agree to the terms included in Appendix A. First, the Huttons waived this argument because they did not object to the Zajacs' testimony at trial. *See Nev. State Bank v. Snowden*, 449 P.2d 254, 255

7

(Nev. 1969) (considering the parol evidence rule and stating, "we are not convinced that absent a proper objection at trial, where the point is specifically called to the attention of the trial court for ruling, the error can be raised for the first time on appeal"). Any such objection would have been meritless because the parol evidence rule does not bar evidence showing that the proffered document is not accurate or does not represent the parties' final agreement. *Clark v. JDI Loans, LLC (In re Cay Clubs)*, 340 P.3d 563, 574 (Nev. 2014) (stating that the parol evidence rule "applies only when the contracting parties agree that the written agreement is the 'final statement of the agreement'" (citing 11 Richard A. Lord, Williston on Contracts § 33:14 (4th ed. 2012))); *Aladdin Hotel Corp. v. Gen. Drapery Servs., Inc.*, 611 P.2d 1084, 1086 (Nev. 1980) ("[W]here it may 'be properly inferred that the parties did not intend the written paper to be a complete and final settlement of the whole transaction between them,' parol evidence is admissible." (citation omitted)); *W. Nat'l Ins. Co. v. Trent*, 247 P.2d 208, 210 (Nev. 1952) (stating that parol evidence is admissible "to negative the very existence of such a contract rather than to vary its terms" because "the parol evidence rule presupposes a valid and binding agreement").

The Huttons argue that the Zajacs failed to plead an affirmative defense concerning their statements and intention regarding the use of the loan proceeds. This was not an affirmative defense, but rather an element of the Huttons' case on which they bore the burden of proof.

The court did not err when it admitted and relied on a letter by a

former Frontline employee. The Huttons offered the letter, both parties agreed to admit it, and it was duplicative of other testimony.

The court did not err when it disregarded the Huttons' arguments based on the Zajacs' statements about Frontline's financial condition. An alleged statement "respecting the debtor's or an insider's financial condition" gives rise to nondischargeability only if the statement is in writing. § 523(a)(2)(B). "[A] statement is 'respecting' a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1761 (2018). Even a statement about a single asset can be a statement respecting the debtor's financial condition if it "bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent, able to repay a given debt or not." *Id.* Frontline's financial health directly affected the Zajacs' finances: they owned the business and used Mr. Zajac's income to cover its losses. Thus, statements about Frontline's finances were statements "respecting" the Zajacs' financial condition. Because the representations were not in writing, they do not support a finding of nondischargeability.

The court did not err when it rejected the Huttons' software development claim. It found that "the Huttons have failed to prove the existence of such an agreement" and that they failed to quantify their losses. These findings were not clearly erroneous, and they are fatal to the Huttons' claim. Even if the Huttons had proved these facts, they bore the

burden of proving the nondischargeability of that claim, and they did not carry that burden.

## CONCLUSION

The bankruptcy court did not err in ruling that the Huttons failed to establish the elements of their § 523(a)(2)(A) claim by a preponderance of the evidence. Accordingly, we AFFIRM.